**AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL–CIO, NEW MEXICO PUBLIC EMPLOYEE COUNCIL 18; New Mexico Correctional Workers Association/AFSCME Local 3422; and Jesse Baca and Ken Dalton and John LaBombard on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**CORRECTIONS DEPARTMENT OF the STATE OF NEW MEXICO and State of New Mexico, Defendants.**

**Nos. CIV 90–14 JC, CIV 90–713 SC.**

United States District Court, D. New Mexico.

Jan. 17, 1992.

---

Morton S. Simon and Jane Bloom Yoha-lem, Law Offices of Simon & Oppenheimer, Santa Fe, N.M., for plaintiffs.

Tom Udall and Denice K. Brown, Office of Atty. Gen., State of N.M., Santa Fe, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

CONWAY, District Judge.

This matter came on for consideration of the plaintiffs' Motion for Partial Summary Judgment, filed July 15, 1991, and the defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment, filed August 1, 1991. The Court heard oral argument on January 9, 1992, at which time the Court granted the defendants' motion to dismiss and remanded this action to New Mexico state district court. The purpose of this Memorandum Opinion and Order is to clearly set forth the basis for the Court's ruling and the parameters of the Court's Order.

The plaintiffs are corrections officers employed at different state correctional institutions throughout New Mexico and the two unions which represent these workers. In essence—and after much refinement—the plaintiffs contend that the state has willfully violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA), by failing to compensate the plaintiffs for meal periods during which, according to the plaintiffs, they are required to perform work.

On January 9, 1990 the plaintiffs filed in this Court a complaint alleging both violations of the FLSA and state law breach of contract claims. Shortly thereafter, a different group of corrections officers (represented by the same attorneys) filed a separate but similar lawsuit against these same defendants in New Mexico state district court. The state court action was removed to federal district court on July 20, 1990. On August 7, 1990 this Court granted an unopposed motion to consolidate the two lawsuits, and the plaintiffs filed their First Consolidated Amended Complaint For Declaratory Judgment, Injunctive Relief and Damages on March 11, 1991.

### I.

Although in their motion to dismiss the defendants attack this lawsuit on several grounds, the dispositive issue before the Court is the discrete but difficult question raised by the Eleventh Amendment to the United States Constitution.[1] The narrow—*and only*—issue that this Court must de-

---

**1.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI.

cide is whether an employee of the State of New Mexico may sue the State for violations of the FLSA in federal court.

### A.

The Eleventh Amendment is a constitutional barrier to suits against a State by citizens of another State in federal court. More than 100 years ago, in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the United States Supreme Court held that the Eleventh Amendment prohibited the federal courts from hearing suits against a State by even its own citizens, in spite of the fact that the language of the Amendment does not literally apply to such actions. In *Employees v. Missouri Dept. of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), a case interpreting the very statute at issue here, the Court reiterated that, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Id.* at 280, 93 S.Ct. at 1616.

Because the Eleventh Amendment does not by its own terms reach a suit against a State by one of its own citizens, whether the prohibition on such suits is a constitutional limitation on the federal courts' jurisdiction or merely a judicially created prudential doctrine of state immunity has long been subject to debate.[2] The Supreme Court has yet to unequivocally and directly resolve this issue. Nevertheless, a majority of the Court has on several occasions employed language tending to support an inference that the doctrine is constitutional and jurisdictional.

In *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), Justice Powell noted that the significance of the Eleventh Amendment as interpreted by the Court in *Hans* "lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *See id.* at 98, 104 S.Ct. at 906. The Court then described the principle as "a jurisdictional bar," *see id.* at 100, 104 S.Ct. at 908. In *Atascadero,* the Court noted that "federal jurisdiction" is barred by the Eleventh Amendment in cases of this sort. *See Atascadero, supra,* 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1. In his plurality opinion in *Welch v. Texas Department of Highways & Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), Justice Powell, discussing the Congress' power to abrogate the States' immunity, commented that "the courts properly are reluctant to infer that Congress has *expanded our jurisdiction.*" *Id.* at 474, 107 S.Ct. at 2946 (emphasis added).[3]

■ The Court is therefore persuaded to treat the doctrine as a constitutional limitation on its jurisdiction rather than a merely prudential approach to state immunity.

2. *See, e.g., Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 23, 109 S.Ct. 2273, 2286, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("It is important to emphasize the distinction between our two Eleventh Amendments. There is first the correct and literal interpretation of the plain language of the Eleventh Amendment.... In addition, there is the defense of sovereign immunity that the Court has added to the text of the Amendment" in cases involving suits against a state by one of its own citizens.); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 251, 105 S.Ct. 3142, 3151, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting); *Edelman v. Jordan,* 415 U.S. 651, 685, 94 S.Ct. 1347, 1366, 39 L.Ed.2d 662 (1974) (Douglas, J., dissenting) ("The Eleventh Amendment does not speak of 'jurisdiction'"). *See generally,* E. Chemerinsky, *Federal Jurisdiction* § 7.3 (1989); Shapiro, *Wrong Turns: The Eleventh Amendment and the Pennhurst Case,* 98 Harv.L.Rev. 61 (1984); Gibbons, *The Eleventh Amendment and State Sovereign Immunity,* 83 Colum.L.Rev. 1889 (1983); Fletcher, *A Historical Interpretation of the Eleventh Amendment,* 35 Stan.L.Rev. 1033 (1983); and Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part I,* 126 U.Pa.L.Rev. 515; *Congressional Imposition of Suit Upon the State,* 126 U.Pa.L.Rev. 1203 (1977).

3. A significant number of Courts have remanded cases removed from state court to federal court on the basis of a State's Eleventh Amendment immunity—an action consistent with the jurisdictional theory of this doctrine. *See Estate of Ritter v. Univ. of Michigan,* 851 F.2d 846, 851–52 (6th Cir.1988); *Silver v. Baggiano,* 804 F.2d 1211, 1214 (11th Cir.1986); *Doucette v. Ives,* 745 F.Supp. 763, 765 (D.Me.1990); *David Nursing Home v. Michigan,* 579 F.Supp. 285, 287–88 (E.D.Mich.1984); and *Naranjo v. Board of Education of the Espanola Public Schools,* No. CIV 91–829 JP, slip op. at 10 (D.N.M. Dec. 30, 1991).

## B.

▮ The defendants in this matter are the State of New Mexico and one of its administrative agencies; therefore the Eleventh Amendment is obviously applicable to this case. However, the Supreme Court has recognized that the United States Congress has the power to abrogate the States' Eleventh Amendment immunity. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Alternatively, a State may waive its immunity and consent to suit in federal court. *See Atascadero, supra,* 473 U.S. at 238, 105 S.Ct. at 3145. Thus, this Court is without jurisdiction over this lawsuit unless either the Congress has abrogated the States' immunity with respect to FLSA claims or New Mexico has taken some action waiving its immunity.

The plaintiffs argue both that the Congress has abrogated the States' immunity to FLSA lawsuits and that these defendants consented to suit in federal court, thus waiving their immunity. In a line of decisions beginning with *Atascadero,* the Supreme Court has consistently indicated its increasing reluctance to find either congressional abrogation or state waiver of a State's constitutional immunity to suit in federal court. The Court has clearly instructed the lower courts that only unequivocal and unambiguous statutory language will support a finding that Congress has abrogated the States' immunity. *See Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989). Likewise, only unequivocal expressions or actions by a State will support a determination that a State has waived its immunity. *See Pennhurst, supra,* 465 U.S. at 100, 104 S.Ct. at 907.

The circumstances underlying this lawsuit do not suggest either that Congress clearly intended to abrogate the States' immunity when it enacted the FLSA or that the State of New Mexico has unequivocally waived that immunity. The defendants' motion, therefore, will be granted and the matter remanded to New Mexico state district court.

## II.

Section 16(b) of the FLSA states that: [a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (*including a public agency*) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b) (emphasis added). In section 203(x), a "public agency" is defined as "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States ..., a State, or a political subdivision of a State...." 29 U.S.C. § 203(x). The plaintiffs argue that these sections demonstrate unequivocally and unambiguously Congress' intent to abrogate the States' immunity for all claims arising under the FLSA.[4]

## A.

"Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention *unmistakably clear in the language of the statute."* *Atascadero, supra,* 473 U.S. at 242, 105 S.Ct. at 3147 (emphasis added). The respondent in *Atascadero* argued that section 505 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2), which provides a remedy for a violation of the Act "to any person aggrieved by any act or failure to act by any recipient of Federal assistance," demonstrates Congress' intent to abrogate the States' immunity, since states are recipients of federal assistance. Justice Powell rejected this argument, stating,

[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to

---

**4.** At the hearing in this matter the plaintiffs argued for the first time that section 255(d) of the FLSA also indicates Congress' intent to abrogate the States' immunity. This Court is not persuaded that this section affects in any way the analysis set forth below.

federal jurisdiction, it must do so specifically.

*Id.* at 246, 105 S.Ct. at 3149.[5]

Two years later, in *Welch v. Texas Dept. of Highways & Public Transportation,* the Court refused to find Congressional abrogation in section 33 of the Jones Act, 46 U.S.C.App. § 688. The plaintiff reasoned that because some states employ seamen, the language making the Act applicable to "any seaman who shall suffer personal injury in the course of his employment," 46 U.S.C.App. § 688, indicated congressional intent to abrogate the States' immunity. In his plurality opinion, Justice Powell emphasized that "[w]e have been unwilling to *infer* that Congress intended to negate the States' immunity from suit in federal court." *Welch, supra,* 483 U.S. at 474, 107 S.Ct. at 2946 (emphasis added).

A five member majority of the Court concluded that Congress did clearly indicate its intent to abrogate the States' immunity when it amended the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 et seq., by enacting the Superfund Amendments and Reauthorization Act of 1986 (SARA). *See Pennsylvania v. Union Gas, supra,* 491 U.S. at 5, 109 S.Ct. at 2276. CERCLA includes the States within its definition of "persons." Persons who are "owners or operators" can be liable under the Act. Union Gas argued that these provisions indicated an intent to abrogate the States' immunity. The United States Court of Appeals for the Third Circuit rejected this argument. *See United States v. Union Gas Co.,* 792 F.2d 372 (3d Cir.1986). On certiorari, the Supreme Court remanded with directions that

the Third Circuit review the abrogation question in light of SARA. The Third Circuit then ruled that CERCLA as amended by SARA did indicate an intent to abrogate the States' immunity. The Supreme Court granted certiorari once again, and the five member majority agreed with the Third Circuit's ruling.

Significantly, no member of the court believed that CERCLA alone (that is, as it existed *before* its amendment by SARA) met the test.[6] The Congress' "unmistakably clear" intent to abrogate the States' immunity was found in the combination of several passages of the two acts. Justice Brennan first noted that CERCLA's definition of "persons" included the States. He then placed particular emphasis on the fact that Congress provided in SARA that under certain circumstances states would be excluded from the category of "owners and operators" liable under the Act. Justice Brennan quoted the following language:

> [t]he exclusion provided under this paragraph shall not apply to any State or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity....

*Id.,* 491 U.S. at 8, 109 S.Ct. at 2278. Justice Brennan concluded that these passages together conveyed with "unmistakable clarity" the intent to abrogate the States' immunity.[7]

---

5. Congress amended the Rehabilitation Act in 1985, adding the following provision: "A State shall not be immune under the Eleventh Amendment ... from suit in Federal court for a violation [of portions of the Act]." Pub.L. 99–506, 100 Stat. 1845.

6. In his majority opinion, Justice Brennan wrote that "[w]e do not say that CERCLA's definition of 'persons' alone overrides that States' immunity, but instead read CERCLA and SARA together, and argue that SARA's wording must inform our understanding of the other definitional sections of the statute." *See Pennsylvania*

*v. Union Gas, supra,* 491 U.S. at 8 n. 2, 109 S.Ct. at 2278 n. 2. In concurrence, Justice White, Joined by the Chief Justice and Justices O'Connor and Kennedy, stated flatly that he found "no 'unmistakably clear language' in either CERCLA or SARA that expresses Congress' intent to abrogate the States' Eleventh Amendment immunity." *Id.* at 45, 109 S.Ct. at 2289.

7. Chief Justice Rehnquist and Justices White, O'Connor and Kennedy refused to find the required intent to abrogate in any of these passages.

On the very day that it decided *Union Gas,* the Court demonstrated emphatically that that decision did not mark a departure from, or liberalization of, the rule announced in *Atascadero.* Writing for the majority in *Dellmuth v. Muth,* Justice Kennedy rejected the argument that Congress abrogated the States' immunity in the Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1400 et seq. Justice Kennedy emphasized that the text of the EHA itself would not support a determination that Congress' unmistakably intended to abrogate the States' immunity. The Court emphasized that,

> [t]he EHA makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity. Nor does any provision cited by the Court of Appeals address abrogation in even oblique terms, much less with the clarity *Atascadero* requires.

*Dellmuth v. Muth, supra,* 491 U.S. at 231, 109 S.Ct. at 2402. Despite concluding that the "statutory structure lends force to the inference that the States were intended to be subject to damages actions for violations of the EHA," *id.* at 232, 109 S.Ct. at 2402, the Court nevertheless refused to rule that Congress had abrogated the States' immunity. Specifically, Justice Kennedy insisted that:

> such a permissible inference, whatever its logical force, would remain just that: a permissible inference. It would not be the unequivocal declaration which, we reaffirm today, is necessary before we will determine that Congress intended to exercise its powers of abrogation.

*Id.*

### B.

The plaintiffs ask this Court to draw the same inference that the Supreme Court refused to draw in *Dellmuth.* Common sense coupled with the legislative and judicial history of the FLSA does support an inference that Congress intended to abrogate the States' immunity under the Act. Indeed, the only court to reach the question subsequent to the Supreme Court's decision in *Atascadero* has determined just that. *See Spencer v. Auditor of Public Accounts,* 705 F.Supp. 340 (E.D.Ky.1989), *aff'd,* 928 F.2d 405 (6th Cir.1991). As *Dellmuth* makes clear, however, neither inferences based on suggestive but unexplicit textual language nor extra-textual legislative or judicial history may be used to establish that Congress intended to abrogate the States' *constitutional* immunity to suit in the federal courts. In light of these principles, this Court cannot conclude that Congress abrogated that immunity in sections 16(b) and 3(x) of the FLSA.

Nothing in the text of the FLSA supports the conclusion that Congress, as a deliberative body, specifically considered "the problems of federalism inherent in making one sovereign appear against its will in the courts of the other," *Employees v. Missouri Dept. of Public Health & Welfare, supra,* 411 U.S. at 294, 93 S.Ct. at 1622, and thereafter decided to abrogate the States' constitutional immunity to suit in federal court. That conclusion must be drawn from an inference. Specifically, the plaintiffs contend that because Congress indicated its intent that the States' be liable in federal court for violations of the FLSA, and because unconsenting States' may not be sued in federal court unless their immunity has been abrogated, Congress must necessarily have determined to abrogate the States' immunity. The four Supreme Court decisions canvassed above suggest a more exacting standard.

No member of the Supreme Court has suggested that Congress must use certain "magic words" in order to abrogate the States' immunity. Nevertheless, the only statute that the Supreme Court has found to satisfy the *Atascadero* test contains specific language stating that "a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity...." *Pennsylvania v. Union Gas, supra,* 491 U.S. at 8, 109 S.Ct. at 2278.[8]

---

**8.** In the very same case no member of the Court found that CERCLA as it existed prior to its

amendment by SARA satisfied the test. The

*Atascadero* and its progeny suggest that because "of the vital role of the doctrine of sovereign immunity in our federal system," *Pennhurst State School & Hosp. v. Halderman, supra,* 465 U.S. at 99, 104 S.Ct. at 907, Congress may not unwittingly defeat the States' right to immunity. A statute that simply makes the States liable without specifically indicating that Congress grappled with the issue of the States' immunity does not indicate that Congress in fact considered and decided the latter issue. Without such a statutory indication of Congress' intent, this Court will not assume that Congress intended such a result.

Without doubt the legislative and judicial history of the FLSA support the plaintiffs' position. In 1973 the Supreme Court ruled that the FLSA, as then constituted, did not abrogate the States' immunity. *See Employees v. Dept. of Public Health & Welfare, supra,* 411 U.S. at 279, 93 S.Ct. at 1614. Congress amended the Act in 1974, inserting the language at issue here, including the definition of "public agency." As far as this Court knows, every court addressing the issue of abrogation after the 1974 amendments to the FLSA has determined that the amendments and the legislative and judicial history of the FLSA "make clear congressional intent to permit state employees to sue their employers under the FLSA." *Spencer, supra,* 705 F.Supp. at 344. *See Jacobs v. College of William and Mary,* 495 F.Supp. 183, 186 n. 4 (E.D.Va.1980); *Carey v. White,* 407 F.Supp. 121, 125 (D.Del.1976). However, the Supreme Court has rejected this approach to the question of sovereign immunity. As Justice Kennedy reiterated in *Dellmuth,*

> [l]est *Atascadero* be thought to contain any ambiguity, we reaffirm today that in this area of the law, evidence of congressional intent must be both unequivocal

and textual.... Legislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment. If Congress' intention is "unmistakably clear in the language of the statute," recourse to legislative history will be unnecessary; if Congress' intention is not unmistakably clear, recourse to legislative history will be futile, because by definition the rule of *Atascadero* will not be met.

*Id.* 491 U.S. at 230, 109 S.Ct. at 2401.

It may be that "[t]hese special rules of statutory drafting are not justified (nor are they justifiable) as efforts to determine the genuine intent of Congress; ..." *Atascadero, supra,* 473 U.S. at 254, 105 S.Ct. at 3153 (Brennan, J., dissenting). Yet it must be acknowledged that legislative history is less indicative of Congress' intent than is language which a majority of Congress has subscribed to by voting in favor of its inclusion in the text of a bill. The Supreme Court has determined that the issues of federalism implicated by considerations of the States' immunity are sufficiently weighty to require the most exacting evidence of congressional intent to disrupt the balance between the States and the federal government. Given these considerations this Court must reluctantly conclude that Congress did not make its intent to abrogate the States' immunity unequivocally clear in the text of the FLSA.[9]

### III.

The plaintiffs argue that the State of New Mexico has waived its immunity by removing this case to federal court.[10] The test for waiver is essentially the same as that for abrogation. A state statute or action must unequivocally indicate the State's decision to waive its immunity.[11]

---

statute at issue here is almost precisely analogous to CERCLA's original provisions.

**9.** *Cf. Zumerling v. Devine,* 769 F.2d 745 (Fed.Cir. 1985), in which the Federal Circuit looked outside of the FLSA to find a waiver of the federal government's sovereign immunity to an action brought under the FLSA, in spite of the fact that

the FLSA's definition of "public agency" includes the United States.

**10.** This argument is not altogether accurate. The State removed only one of the two lawsuits consolidated in this action.

**11.** In *Atascadero* Justice Powell wrote that "we require an unequivocal indication that the State

Whether a State's attorney general has waived sovereign immunity on behalf of the State by voluntarily appearing and litigating in federal court depends on two questions: 1) whether the action taken by the attorney general is sufficient to constitute a waiver; and 2) whether the attorney general has the authority under state law to waive the State's sovereign immunity. The Court need not reach the second issue, as the first is dispositive.

In *Gallagher v. Continental Insurance Co.*, 502 F.2d 827 (10th Cir.1974) the Circuit held that the Colorado's Attorney General waived the State's immunity by joining in the petition to remove and by actively resisting a motion to remand. The plaintiffs argue that under *Gallagher* New Mexico has waived its immunity. This Court disagrees. *Gallagher* was decided ten years before *Atascadero* and reflects a less stringent approach to these issues. Furthermore, Colorado *resisted* the motion to remand in that case. Thus, it could be argued that Colorado's waiver was indeed unequivocal.

In this case, New Mexico's Attorney General is contesting the Court's jurisdiction. In addition, the State did not remove the case originally before this Court; it removed only the second case (which was originally before Judge Campos and was later consolidated with this case). It can hardly be said that the State's actions are "unequivocal": to the contrary, the State's actions have been at most equivocal with respect to the question of this Court's jurisdiction. Although some actions would support a waiver, others would not. Under *Atascadero,* the Court cannot conclude that New Mexico has waived its immunity. Other courts faced with similar circumstances have reached the same conclusion. *See Estate of Ritter v. Univ. of Michigan, supra,* 851 F.2d at 851–52; *Silver v. Baggiano, supra,* 804 F.2d at 1214; and *Doucette v. Ives, supra,* 745 F.Supp. at 765; *cf. Stephans v. Nevada,* 685 F.Supp. 217, 219

(D.Nev.1988) (removal does not establish waiver unless the State's attorney general has statutorily conferred power to waive immunity); *David Nursing Home v. Michigan, supra,* 579 F.Supp. at 287–88 (same).

## IV.

Because the Eleventh Amendment is a jurisdictional barrier to this action, this matter must be remanded in its entirety to New Mexico state district court, pursuant to 28 U.S.C. § 1447(c). In reaching this conclusion, it is important to emphasize the narrowness of this Court's decision. Throughout this opinion the Court has referred to the States' immunity to suit. A distinction must be drawn between a State's *constitutional* immunity to suit in federal court and a State's *common law* sovereign immunity to suit in general.[12] This Court's decision concerns only the former doctrine; questions concerning the State's immunity to an FLSA lawsuit in state court must be resolved in another forum. Thus this Court has had no occasion to consider whether or not the State may ultimately be a held liable to its employees for any alleged violations of the FLSA. All that has been decided here is that the State may not be forced against its will to litigate this question in this or any other federal court.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED:

1. The defendants' motion be, and hereby is, granted;

2. This matter be, and hereby is, remanded in its entirety to New Mexico state district court; and

3. The plaintiffs' motion for partial summary judgment be, and hereby is, denied as moot.

---

intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Id.* 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1.

**12.** *See Hilton v. South Carolina Public Railways Commission,* —— U.S. ——, 112 S.Ct. 560, 565, 116 L.Ed.2d 560 (1991).