Albert L. BRINKMAN, et al., Plaintiffs,

v.

The DEPARTMENT OF CORRECTIONS
OF THE STATE OF KANSAS,
Defendant.

No. 91–4208–C.

United States District Court,
D. Kansas.

Sept. 16, 1992.

Brad E. Avery, Kansas Ass'n of Public Employees, Topeka, Kan., for plaintiffs.

Charles E. Simmons, Kansas Dept. of Corrections, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on four motions: the defendant's motion to dismiss based upon principles from the Tenth and Eleventh Amendments (Dk. 18); the defendant's motion to dismiss (Dk. 42) premised on the doctrines of res judicata and collateral estoppel; and the defendant's motion (Dk. 44) and the plaintiffs' motion (Dk. 46) for summary judgment grounded on the lack of material facts to prevent entering judgment on the merits of the plaintiffs' claims under the Fair Labor Standards Act of 1938 ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.* The motions will be decided *seriatim.*

Defendant's Motion to Dismiss (Dk. 18).

The defendant argues the FLSA's application to employees of a state correctional system impinges upon state sovereignty in violation of the Tenth Amendment. In effect, the defendant asks the court to resurrect a test from an overruled Supreme Court decision and to abrogate the FLSA's coverage of state and local government employees accordingly.

To trace the meandering path taken by the Supreme Court and Congress in making the FLSA applicable to state and local governments, the court will use as road maps two decisions from the Tenth Circuit, *Lamon v. City of Shawnee, Kansas,* 972 F.2d 1145 (10th Cir.1992), and *Local 2203 v. West Adams Cty. Fire Protection Dist.,* 877 F.2d 814 (10th Cir.1989). As enacted in 1938, the FLSA expressly exempted the states and their political subdivisions from its comprehensive remedial scheme that set a minimum wage and an overtime wage. 29 U.S.C. § 203(d) (1940). Congress, in 1966, removed this exemption by including within the definition of "employer" the state or its political subdivisions operating certain schools, hospitals, nursing homes, railways or carriers. 29 U.S.C. § 203(d) (1966). The Supreme Court in *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), found this amendment constitutionally valid under the Commerce Clause. In 1974, Congress expanded the reach of FLSA to cover virtually all state and local government employees. FLSA Amendments of 1974, 29 U.S.C. § 203(d) and (x). Overruling *Wirtz,* the Supreme Court in 1976 invalidated FLSA's extension to state and local governments when those entities were performing traditional governmental functions. *National League of Cities v. Usery,* 426 U.S. 833, 851–52, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). The Court believed that Congress' authority under the Commerce Clause could not be wielded so as to deny effectively the States' sovereign existence. *Id.* at 851–52, 96 S.Ct. at 2474. Overruling itself again, the Supreme Court rejected, "as unsound in principle and unworkable in practice," the "integral" or "traditional" governmental test established in *Usery. Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 546, 105 S.Ct. 1005, 1014, 83 L.Ed.2d 1016 (1985). Out of "[d]ue respect for the reach of congressional power within the federal system," the *Garcia* majority believed that the political process provided an adequate check on Congress' exercise of Commerce Clause power and that this check displaced any constitutional need for articulating limits on this power in this setting. 469 U.S. at 556–57, 105 S.Ct. at 1020. To cushion the blow from the Act's revived application, Congress gave state and local employers a grace period running to April 15, 1986, before the Act became

applicable to them. Fair Labor Standards A˙.endments of 1985, Pub.L. No. 99–150 (1985).

Defendant asks the court to resurrect the test from *Usery* arguing the Supreme Court in *Gregory v. Ashcroft,* 501 U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), dealt a blow to *Garcia.* The *Gregory* decision certainly reaffirms much of the federalism principles espoused in *Usery.* It also adopts a plain statement rule for use in deciding whether Congress actually intended to override a state's sovereign powers. The Court found no clear and manifest statement that the Age Discrimination in Employment Act was intended to cover appointed state judges. Even so, the Court expressly acknowledged *Garcia* and said it was avoiding any decision on whether Congress had exceeded its authority under the Commerce Clause and was deciding only whether Congress had exercised that authority.[1] The Court in *Gregory* did not question the precedential force of *Garcia* but simply worked around it. The defendant may have cause to wish and hope that *Gregory* is a harbinger of *Garcia*'s overruling, but this court has no concrete basis for concluding that *Garcia* is not controlling here. The FLSA's coverage of employees of state correctional system does not violate the Tenth Amendment. *See Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1541 (10th Cir.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992); *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1068 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991).

■ The defendant's next constitutional volley is the Eleventh Amendment. Congress may override the States' Eleventh Amendment immunity in the exercise of its Commerce Clause power. *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14–15, 109 S.Ct. 2273, 2281, 105 L.Ed.2d 1 (1989) (plurality opinion); *see id.* at 57, 109 S.Ct. at 2295 (White, J., concurring in the judgment).

This is accomplished only when Congress' intent to do so is manifested in "unmistakable language in the statute itself." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 243, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985).

■ On two recent occasions, the Ninth Circuit has rejected Eleventh Amendment challenges to the FLSA, *Hale v. State of Ariz.,* 967 F.2d 1356 (9th Cir.1992); and *Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1323–24 (9th Cir.1991). In a somewhat surprising decision, not cited by either side, a federal district court in New Mexico held that the Eleventh Amendment barred an action by corrections officers against the New Mexico Corrections Department. *AFSCME v. Corrections Dept. of State of N.M.,* 783 F.Supp. 1320 (D.N.M. 1992). The federal judge there gleaned an exacting standard from the relevant Supreme Court decisions and concluded that the FLSA fell short of it. 783 F.Supp. at 1324–26. This court is not persuaded by this precedent within the Tenth Circuit principally because the judge did not consider the effect of the 1985 amendment which gave the states until April 15, 1986, to conform to FLSA procedures. Pub.L. No. 99–150, 99 Stat. 787 § 2(c)(1) (1985), 29 U.S.C. § 216 (historical note) (1988). This 1985 amendment, read in conjunction with 29 U.S.C. §§ 203(x) and 216(b), is unequivocal, textual evidence of Congress' intent to abrogate the States' Eleventh Amendment immunity. *See Hale,* 967 F.2d at 1362; *Gilbreath,* 931 F.2d at 1324.

## Defendant's Motion to Dismiss (Dk. 42).

■ Calling upon the doctrines of res judicata and collateral estoppel, the defendant argues the plaintiffs are bound by a prior state court decision on the issue whether their meal times are compensable. The defendant also seeks leave to amend its answer to add these affirmative defenses of collateral estoppel and res judicata.

---

**1.** For good reason, the defendant does not cite *Gregory* nor argue for the proposition that the FLSA lacks a plain statement that employers, such as the defendant, are covered by it. At 29 U.S.C. § 207(k), the FLSA creates special standards for public agencies with employees engaged in "fire protection activities or ... law enforcement activities (including security personnel in correctional institutions)."

The plaintiffs contend the defendant has waived these defenses and the court should deny it leave to add them. Since the filing of the plaintiffs' memorandum in opposition, the parties have submitted an agreed pretrial order which was signed and filed by the court on August 31, 1992. The affirmative defense of res judicata appears, without reservation or objection, in the pretrial order as one of the defendant's contentions and as one of the issues of law. As evidenced by the pretrial order, the plaintiffs have dropped their objections to the defendants' addition of this affirmative defense, and the issue of res judicata is properly before the court.

In deciding a motion to dismiss, the court must accept as true on their face the well-pleaded factual allegations of the complaint, and all reasonable inferences are made in favor of the plaintiffs. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). Dismissal is appropriate only if it appears beyond a reasonable doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In ruling on a rule 12(b)(6) motion, the court may not consider material beyond the pleadings unless it is submitted or attached as part of the complaint. *Hal Roach Studios v. Richard Feiner and Co.*, 883 F.2d 1429, 1441 n. 18 (9th Cir.1989). If extraneous matters are submitted by either side and accepted by the court, the motion must be converted into one for summary judgment. *Torres v. First State Bank of Sierra County*, 550 F.2d 1255, 1257 (10th Cir.1977). Upon conversion of the motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.Civ.P. 12(b).

The defendant's motion to dismiss is flawed for any number of reasons. The merits of the motion cannot be decided from the face of the pleadings. Nor has the defendant submitted as exhibits the complaint or orders from the prior state court action. Nor has the defendant applied in any meaningful way the doctrines to the facts and issues of the prior state court action and the current federal court action. While pointing to the state district court's holding that the officer's meal periods were not compensable, the defendant does not say what legal or factual theories were alleged or decided there. While identifying those persons who were parties to both suits, the defendant avoids saying the restrictions on the officers' meal periods have not changed since 1986.

The plaintiffs have submitted the memorandum decision filed September 26, 1989, and the journal entry of dispersal filed June 29, 1990, in the District Court of Shawnee County, Kansas, in the case of *Turner v. State of Kansas*, No. 86–CV–831. The suit was filed by a class consisting of "correctional officers of the Kansas Department of Corrections who, between the period of time from June 11, 1981, to June 11, 1986, worked five days per week and were required to be present at the institution to which they were assigned more than forty hours per week." The plaintiffs alleged the defendants breached their employment contract evidenced by a personnel manual and employee manual in not paying them overtime for their preliminary and postliminary time. The issue of lunch breaks was raised by the defendants:

> The defendants further claim that though corrections officers at *KSIR* [Kansas State Industrial Reformatory] worked shifts of up to eight and one-half hours in length, they were allowed a thirty minute lunch break which offsets all of their preliminary and postliminary time.

(Emphasis added). The state court rejected the plaintiffs' position that the lunch periods were compensable time. The state court reached this conclusion after considering a FLSA case from the Sixth Circuit, *Hill v. United States*, 751 F.2d 810 (6th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985), and a breach of collective bargaining agreement case from the Kansas Supreme Court, *Atteberry v. Ritchie*, 243 Kan. 277, 756 P.2d 424 (1988). The state court limited its analysis to the facts concerning *KSIR* officers' meal periods and did not suggest or hold that

the same analysis would apply to correction officers in other state institutions.

The doctrine of res judicata or claim preclusion is to prevent the recurrent litigation of " 'issues that were or could have been dealt with in an earlier litigation.' " *Northern Natural Gas Co. v. Grounds,* 931 F.2d 678, 681 (10th Cir.1991) (quoting *Angel v. Bullington,* 330 U.S. 183, 193, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947)). The plaintiffs contend, the defendants do not refute, and it appears correct that the plaintiffs could not have litigated in the state court a FLSA meal time claim for the period from June 1, 1981 through June 1, 1986, as the FLSA did not become applicable to the States until April 15, 1986. The plaintiffs are not asserting here any claim for the period between April 15, 1986 and June 1, 1986. Therefore, the plaintiffs' FLSA claim could not have been raised in the state court action.

The alleged identity between the state court issues and the federal court issues has not been demonstrated by the defendant. Though both actions implicate some common policies, the standards enunciated and applied by the state court are arguably not congruent with the literal standards of the FLSA. More importantly, it cannot be overlooked that the state court decided the meal period issue only in regards to correction officers at KSIR while the plaintiffs here are corrections officers at the Lansing Correctional Facility. Before res judicata could bar the same type of claims against the same defendants for similar conduct occurring at a later time, the court must evaluate the factual matters occurring since the first action and judgment. *See People of the State of Cal. v. Chevron Corp.,* 872 F.2d 1410, 1415 (9th Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1032 (1990). The court has no basis in the record for concluding or even assuming that the meal period restrictions relevant to correction officers at KSIR during the 1981 through 1986 period are the same ones relevant to correction officers at Lansing during the period from 1988 to the present. The defendant has failed to show that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.

### Cross–Motions for Summary Judgment (Dks. 44 and 46).

If no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law, the court shall grant a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The issue also must be based on a viable legal theory in order to be "genuine." *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. In effect, the inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

The movant's burden under Fed.R.Civ.P. 56 is to specify those portions of the record which demonstrate the absence of a genuine issue of fact under the relevant substantive law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987). Summary judgment will be granted when the movant is able to show it is entitled to judgment as a matter of law based upon the uncontroverted, operative facts.

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts that show a genuine issue for trial remains and that are supported by the kinds of evidentiary

materials listed in Rule 56(c). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Because its evidence is deemed true and all reasonable inferences are drawn in its favor, the opposing party need come forth with only such evidence from which a fair-minded jury could return a verdict for it. *Windon,* 805 F.2d at 346.

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. at 2555. At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon,* 805 F.2d at 346. Cross-motions for summary judgment do not excuse the court from its task in deciding whether genuine issues of material fact exist. *Missouri Pac. R. Co. v. Kansas Gas & Elec. Co.,* 862 F.2d 796, 799 (10th Cir.1988).

For purposes of these motions, the court will accept the following facts as uncontroverted:

The plaintiffs are corrections officers at the Lansing Correctional Facility assigned to one of four shifts covering the twenty-four hour day. Their time/payroll records reflect they work regular forty-hour weeks. The plaintiffs, however, are among the officers who are required to report to roll call fifteen minutes before the scheduled shift and spend approximately fifteen minutes after the shift providing relief briefings. To offset this thirty minutes of extra work time, the plaintiff officers are given a thirty-minute break period which is not counted as hours worked on time sheets and is not calculated as part of any compensation. The plaintiffs allege this break is not a bona fide meal period and,

therefore, is compensable work time for which they should be paid at a rate of one and one-half times their regular hourly wage.

While on their thirty-minute break, the plaintiff correction officers are subject to a number of restrictions. Breaks are to be taken during the middle six hours of a shift. Two break rooms are available. The time it takes them to walk from their post to the break room is part of their break time. They are required to record when they leave for and return from break. They must remain in uniform. They are not permitted to leave the grounds of the facility or to visit their automobiles at their own discretion. They may not move from their assigned compound to another without permission. They may walk immediately outside the compound. They are not allowed to take breaks at their duty posts or to contact other officers who are not on break. They are not allowed to bring reading material identified as "contraband" into the break room. They are subject to recall for emergency alarms, and if they become aware of an alarm then they are expected to respond. They may be disciplined for not reporting when recalled during break. Officers are expected both to report any inmate violations and to intervene in any inmate disturbances that are observed during break. Outside visitors, such as family members, are not allowed inside or outside the facility.[2]

The FLSA requires employers to pay overtime to employees for the time worked in excess of forty hours per week. 29 U.S.C. § 207(a).[3] A definition of "work" is not found in the FLSA. Filling this void, the courts have come up with this basic definition: "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the

---

**2.** There are other restrictive circumstances that the plaintiffs submit exist, but they are controverted. Judgment may be entered as a matter of law only if sustained by the uncontroverted facts. Factual disputes that are immaterial under the substantive law do not preclude summary judgment. *See Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1533 (10th Cir.1991).

**3.** The FLSA gives a state or local government the option of complying with the maximum hour and overtime provisions of § 207(a)(1) or of adopting a work period scheme pursuant to § 207(k) for its employees engaged in fire protection or law enforcement. It would appear that the defendant in this case has chosen to comply with the provisions of § 207(a)(1).

employer and his business.'" *Renfro v. City of Emporia, Kan.,* 948 F.2d at 1536 (quoting *Tennessee Coal Co. v. Muscoda Local,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944)).[4] The courts have built upon this definition certain tests for determining if on-call time is compensable under FLSA. *Renfro,* 948 F.2d at 1536. The central question raised by the case *sub judice* is whether the test for deciding if a meal period is compensable under FLSA should be exclusively the literal application of a relevant regulation[5] or should include the fundamental principles of FLSA embodied in the definition of "work" developed by case law.

Other federal district courts in Kansas have heard claims that meal periods are compensable under FLSA. *Armitage v. City of Emporia, Kan.,* 782 F.Supp. 537 (D.Kan.1992) (J. Kelly) (City police department detectives), *appeal pending* (10th Cir.); *Lamon v. City of Shawnee, Kan.,* 754 F.Supp. 1518 (D.Kan.1991) (J. Saffels) (City police officers), *aff'd in part and rev'd in part,* 972 F.2d 1145 (10th Cir. 1992); *Wahl v. City of Wichita, Kan.,* 725 F.Supp. 1133 (D.Kan.1989) (J. Kelly) (City police officers); *Nixon v. City of Junction City, Kan.,* 707 F.Supp. 473 (D.Kan.1988) (J. O'Connor) (City police officers). In each case, the court used primarily the completely relieved of duty standard set forth in the regulation § 785.19 and concluded that the officers' lunch periods were compensable as work time. Relying principally on the law and facts from these four decisions, the plaintiffs contend they are entitled to summary judgment.

The Tenth Circuit recently placed in doubt much of this district's case law on the meal period test under FLSA.[6] In *Lamon,* the plaintiffs were police officers employed under a 28-day work period scheme available under § 207(k). The court found these to be the relevant circumstances of the meal periods:

An officer's ½-hour meal period begins once the officer arrives at a luncheon location and reports "10–10" to the dispatcher, signifying the suspension of patrol duty. During meal periods, officers are relieved of their patrol assignments, but are subject to call and are required to leave a telephone number where they can be reached or to monitor a portable radio. While on meal break, an officer must respond to emergency calls or personnel shortages if instructed to do so. An officer is relieved of patrol duties during meal time but retains some responsibilities, including: responding to citizen requests or inquiries, responding to crimes committed in the officer's presence and acting in a responsible and professional manner. Officers may take their meal periods at any location within the City or, with approval, outside the City at their homes or at restaurants if in close proximity to the City. The officers

---

**4.** The Supreme Court has recognized that work does not require exertion; for a person can be employed to do nothing:

Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

*Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944).

**5.** Part 785 of Title 29 of the Code of Federal Regulations "discusses the principles involved in determining what constitutes working time." 29 C.F.R. § 785.1. Section 789.19(a) specifically addresses meal breaks:

*Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at this desk or a factory worker who is required to be at his machine is working while eating.

(citations omitted).

**6.** See footnote 11.

may not conduct personal business errands during the ½–hour period, such as picking up laundry at the cleaners, getting a haircut or grocery shopping.

*Lamon,* 972 F.2d at 1149 (record citations omitted). The jury returned a verdict in favor of the plaintiffs' claim for compensation of meal periods under FLSA. The defendant City appealed arguing the court erred in denying its motion for directed verdict and in instructing the jury on the claim.

The Tenth Circuit first held that the trial court did not err in submitting the claim to the jury for there was sufficient evidence upon which a reasonable factfinder could have returned a verdict for the plaintiffs. As to the jury instruction issue, the Tenth Circuit found error, reversed, and remanded for a new trial.

The district court's instruction on meal periods repeated much of the critical language from 29 C.F.R. § 785.19. The Tenth Circuit said the district court should have looked instead to 29 C.F.R. § 553.223(b).[7] The Tenth Circuit believed this specific regulation, rather than the general meal period regulation of § 785.19, was controlling

of a compensability question of meal periods in the subsection (k) context. *Lamon,* 972 F.2d at 1156. In contrasting § 785.19 and § 553.223(b), the Tenth Circuit found two differences which were important in its mind. First, § 553.223(b) did not include the following sentence from ` § 785.19: "The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." [8] The other was the illustrations found in § 553.223(b) of a meal period being compensable when a law enforcement officer is forced to remain on call in barracks or is assigned to extended surveillance.[9] The Tenth Circuit concluded that the "completely relieved from duty" standard under § 553.223(b) means:

> Hence, a police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor. That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working. (citations omitted). Instead, consistent with the language of § 553.223(b) and with traditional principles underlying FLSA, a law en-

---

**7.** Section 553.223(b) reads:

> If a public agency elects to use the section 7(k) exemption, the public agency may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, *provided that the employee is completely relieved from duty during meal period, and all the other tests in § 785.19 of this title are met.* On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.

29 C.F.R. § 553.223(b) (emphasis added).

**8.** The Tenth Circuit believed this distinction important even though § 553.223(b) expressly adopts the completely relieved from duty standard "and all the other tests in § 785.19." *Cf. Kohlheim v. Glynn County, Ga.,* 915 F.2d 1473, 1477 (11th Cir.1990) (Because § 553.223(d) incorporated the tests of § 785.19, the court applied the tests from the latter regulation).

**9.** The court does not explain the significance of this point. In *Lee v. Coahoma County, Miss.,* 937 F.2d 220, 225 (5th Cir.1991), cited by the *Lamon* panel, the Fifth Circuit noted that the

facts of the claim before it did not "resemble this example." In *Leahy v. City of Chicago,* 785 F.Supp. 724, 727 (N.D.Ill.1992), also cited by the *Lamon* panel, the district court noted that the illustrations used by the two regulations were "radically different" and that its case was not analogous to the one used in § 553.223(b). The courts in *Lee, Leahy,* and *Lamon* seem to read into the illustration of § 553.223(b) that the employee must be performing the same or similar kind of substantial duties over the meal period before compensation is due. These courts have attached more significance to the illustrations than was intended apparently by the Department of Labor. For at 29 C.F.R. § 785.1, it states:

> The amount of money an employee should receive cannot be determined without knowing the number of hours worked. This part discusses the principles involved in determining what constitutes working time. It also seeks to apply these principles to situations that frequently arise. It cannot include every possible situation. No inference should be drawn from the fact that a subject or an illustration is omitted.

At best, the example at § 553.223(b) illustrates a common situation for § 207(k) employees and does not suggest a different meaning for the "completely relieved from duty" standard.

forcement employee is completely relieved from duty during a meal period, for purposes of § 553.223(b), when the employee's time is not spent predominantly for the benefit of the employer. (citations omitted). If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under FLSA. Conversely, a police officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.

As literally extracted from § 785.19, the trial court's instruction no. 10 deprived the jury of an ample understanding of the issues and standards of the case. The instruction countenanced the misapprehension that the performance of *any* official duty, no matter how insignificant, during meal periods rendered the time compensable. We reject that result.

*Lamon,* 972 F.2d at 1157–58 (footnotes omitted) (emphasis in original).

The plaintiff corrections officers were not covered by a § 207(k) scheme; therefore, the choice exists to ignore the *Lamon* decision as limited to § 553.223(b). In fact, the Tenth Circuit specifically restricted its interpretation to the "completely relieved from duty" standard appearing in § 553.-223(b). *Lamon,* 972 F.2d at 1158 n. 18. For several reasons, this court in good conscience cannot ignore *Lamon*'s precedential weight. The reasons become apparent after reading a footnote in *Lamon:*

In coming to this conclusion, we note that our interpretation of the "completely relieved from duty" standard only applies to that phrase as used in § 553.-223(b). For that reason, with respect to the application of the "completely relieved from duty" standard in *Wahl v. City of Wichita,* 725 F.Supp. 1133 (D.Kan.1989) and *Nixon v. City of Junction City,* 707 F.Supp. 473 (D.Kan.1988), both of which relied on § 785.19 in ruling that meal periods of police officers were compensable, we make no comment, except for noting the following. While both decisions adhered to a "completely relieved from duty" standard, the court in *Wahl,* after citing the predominant benefit test, stated: "What matters in meal period cases is whether the employee is subject to real limitations on his personal freedom which inure to the benefit of his employer." 725 F.Supp. at 1144. In *Nixon* the court found that the plaintiff police officers in that case performed "substantial duties" during their lunch periods. 707 F.Supp. at 478. *Moreover, our contrasting of the two sections, § 553.223(b) and § 785.19, does not mean that the "completely relieved from duty" standard as used in the latter section should necessarily take on a different meaning than that of the former section.* See, e.g., Hill v. United States, 751 F.2d 810, 813–14 (6th Cir. 1984) (applying predominant benefit test to meal periods of letter carrier under § 785.19).

*Lamon,* 972 F.2d at 1158 n. 18 (emphasis added). Despite professing a narrow ruling, the panel extracted from *Wahl* and *Nixon,* two § 785.19 cases, some language indicative of the predominant benefit test. More importantly, the panel ended by contradicting in a single statement its earlier analysis distinguishing the two regulations.

This court believes *Lamon* strongly implies that the "completely relieved from duty" standard appearing in both § 553.-223(b) and § 785.19 has the same meaning. The two distinctions observed between § 553.223(b) and § 785.19 are insubstantial reasons for reading identical words differently in almost indistinguishable contexts. No rationale for having a less rigorous meal period standard for an employee covered under § 207(k) is offered in *Lamon.* Section 207(k) obviously is intended to address the unique employment circumstances of a law enforcement officer, fire fighter, or corrections officer. Presumably, the same circumstances justify taking the same approach to meal period times for those similarly employed whether covered by § 207(k) or not. The court feels compelled to apply the standards articulated in *Lamon* to this case.

■ What the Tenth Circuit did in *Lamon* was to remind us that the regulatory standard, "completely relieved from duty," cannot be applied singularly or be divorced from the traditional principles underlying FLSA.[10] Who predominantly benefits from how an employee spends his time is the overriding question of whether the employee is working. Simply because the employee may be on-call and retain some other duties over his lunch period does not by perforce require compensation. *Lamon*, 972 F.2d at 1157 (citing *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 225 (5th Cir. 1991) (Meal periods found not compensable for deputies which "were allowed to go where they pleased during the break, would only radio out once they reached the place where they wished to eat and were called back only in an occasional emergency."), and *Leahy v. City of Chicago*, 785 F.Supp. 724, 727 (N.D.Ill.1992) (Police officers' meal periods found not compensable even though officers were required to remain within assigned district; to carry weapon and remain in uniform, to report meal locations; to terminate meal period if assistance needed, answers needed, or instructions to be followed; to take lunch with patrol partner; to refrain from playing golf, reading non-department material, resting or napping, or consuming alcoholic beverages; to respond to citizen requests for assistance or information; to remain in radio contact and respond to calls; and to respond to citizen or police emergencies)). If the employee spends his lunch time primarily concerned with personal pursuits, such as relaxing and consuming food, then the employee has been "completely relieved from duty." *Lamon*, 972 F.2d at 1157. On the other hand, the employee is not "completely relieved from duty" when the lunch period principally involves the performance of official responsibilities that prevent a comfortable and adequate lunch period.[11] *Id.*

■ Some courts have addressed what duties assumed by a security guard during the meal period rise to the level of work. In *Agner v. United States*, 8 Cl.Ct. 635 (1985), *aff'd*, 795 F.2d 1017 (Fed.Cir.1986), the plaintiffs were members of the police force assigned to the Library of Congress. The United States Claims Court granted summary judgment for defendant on the strength of an earlier decision holding that "'the mere fact that an employee is required to eat lunch on the employer's premises and to be on a duty status, subject to emergency call during such period, does not convert this private leisure time into compensable time.'" 8 Cl.Ct. at 638 (quoting *Baylor v. United States*, 198 Ct.Cl. 331, 364 (1972)). Another line of cases have found meal breaks compensable if the guards remained on-call and subject to cer-

---

10. Administrative regulations "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

11. As the Tenth Circuit did, one can find passing references in *Nixon* and *Wahl* to the predominant benefit test. For example, in *Nixon*, the observation that the officers were performing substantial duties over the meal period was made only after the court concluded that:

> By remaining available for calls, the officers are not completely relieved of duty. (citation omitted). Additionally, as a practical matter, the officers must remain in uniform and armed during their lunch periods and must continue to perform the duties that they perform throughout their shift, *i.e.*, observing, being observed, and responding to emergencies, crimes and citizens. Thus the officers

> are not completely relieved of duty. Although they may infrequently be required to take affirmative action during their lunch periods, the court has determined that these officers are nevertheless on duty during lunch periods simply because they are required to take appropriate action whenever the need arises.

707 F.Supp. at 478. One can find similar statements in *Wahl*, 725 F.Supp. at 1141–1144. In both cases, the courts held as a matter of law that the employer predominantly benefitted from the meal period principally because the employee remained on-call. The Tenth Circuit in *Lamon* expressly rejects the notion that on-call duty over a meal period by perforce means compensation is due. The Tenth Circuit, instead, favors the case-by-case analysis employed in the on-call time cases. Bound to follow Tenth Circuit precedent, *U.S. v. Spedalieri*, 910 F.2d 707, 709 n. 2 (10th Cir.1990), this court has no reason to compare and contrast the facts of this case with those in *Nixon, Wahl*, and *Armitage*.

tain restrictions which ensured their availability in the event of an emergency. *See, e.g. Glenn L. Martin Nebraska Co. v. Culkin,* 197 F.2d 981 (8th Cir.), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952); *Banks v. Mercy Villa Care Center,* 225 Neb. 751, 407 N.W.2d 793 (1987); *Lindell v. General Electric Co.,* 44 Wash.2d 386, 267 P.2d 709 (1954). Even in this line of cases, the courts were concerned with whether the duties actually performed over the meal period were substantial, were the same as the guards' work duties, and interfered with the private pursuit of lunch. All of these cases put the focus on whether the time spent during the lunch period predominantly benefits the employee or the employer.

The defendant contends the only real limitation on the plaintiffs' meal period, supported by reliable evidence, is the geographic restriction to the prison facility put in place to maintain the prison's integrity and to prevent the introduction of contraband. In contrast, the plaintiffs consider themselves tethered to the facility while facing significant and substantial restrictions on their actions and speech all for the benefit of the defendant having a ready and functioning security staff.

After reviewing the record carefully, the court believes genuine issues of material fact exist barring the entry of summary judgment for either side. While the uncontroverted facts identified above demonstrate a solid case for the plaintiffs, the court does not believe it is in a position to say as a matter of law that the meal breaks predominantly benefit the defendant. This determination will require a better understanding of the nature and extent of the asserted restrictions, considering the parties' agreement, appreciating the relationship between the duties performed at work and assumed or suffered on break, and knowing all relevant surrounding circumstances. *Renfro v. City of Emporia,* 948 F.2d at 1537. Among the factual issues are the existence and extent of any restrictions on discussing union or political matters or in reading certain literature or materials; the defendant's knowledge and tolerance of some plaintiffs' carrying and monitoring their radios during break; the

nature and extent of the plaintiffs' continued observation of prisoners while on break; the relationship that these monitoring and observing duties bear to the plaintiffs' principal work activity; the availability of sleeping on break considering any rules or other prohibitive circumstances; the frequency of emergency calls interrupting break; and the consistency with which these meal breaks were given. These issues are central in deciding whether during the meal periods the plaintiffs were primarily occupied by their relaxation and consumption of food or were performing substantial duties that prevented their comfort and enjoyment. Who predominantly benefits from the plaintiffs' meal breaks is a question that is answered only after balancing all relevant circumstances and assessing the credibility of widely varying accounts of the plaintiffs' freedoms and restrictions. The court must leave that responsibility to the finder of fact.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss (Dk. 18) is denied;

IT IS FURTHER ORDERED that the defendant's motion to dismiss (Dk. 42) is denied;

IT IS FURTHER ORDERED that the defendant's motion for summary judgment (Dk. 44) and the plaintiffs' motion for summary judgment (Dk. 46) are denied;