No. 79,544

MICHAEL POWELL, RICK LANCASTER, RICK WOLFF, TED HOGAN, MARK DUTTON, and ROBERT SAGE, *Appellants,* and TIM LEARNED, *Intervenor/Appellant,* v. SIMON MANAGEMENT GROUP, L.P., *Appellee.*

(960 P.2d 212)

Opinion filed May 29, 1998.

*Jim L. Lawing,* of Wichita, argued the cause and was on the briefs for appellants.

*Kelly J. Johnson,* of Morrison & Hecker, L.L.P., of Wichita, argued the cause, and *Alan L. Rupe,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Six security officers and a maintenance worker, all full-time employees, filed this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (1994), (FLSA) against the shopping mall management firm which employed them. They alleged that they worked $2\frac{1}{2}$ hours overtime each week without compensation, in violation of 29 U.S.C. § 207 (1994). They sought liquidated damages and an award of costs and attorney fees under 29 U.S.C. § 216(b) (1994). The case was tried to the court, and judgment was entered for the employer. The employees appealed. This court granted employer's motion to transfer the case from the Court of Appeals to this court.

Plaintiffs/appellants Michael Powell, Rick Lancaster, Rick Wolff, Ted Hogan, Mark Dutton, and Robert Sage were at pertinent times security officers employed by defendant/appellee Simon Manage-

ment Group, L.P., (Simon Group) a shopping mall management firm. Intervenor/appellant Tim Learned was at pertinent times employed by the Simon Group as a maintenance worker. Christine Viles and John Bates supervised the employees for the Simon Group. They testified for defendant.

The employees' workday was 8½ hours long, including a ½-hour uncompensated meal break. They sought compensation for the meal break on the theory that they were required to continue rendering service to the employer during the meal break. The security officers monitored their radios and sometimes responded to calls during the meal break, and they believed that they were required to do so. The Simon Group's position was that the security officers were mistaken in that belief. The supervisors, however, had not corrected the mistaken belief. The maintenance worker also was required to monitor the radio and respond to calls during his meal breaks. Any worker who missed his lunch break to respond to a call could note it on his time card and receive compensation for the time.

After trial and the subsequent submission of proposed findings of fact and conclusions of law by the parties, the trial judge stated that he was granting the Simon Group's motion for directed verdict, which had been made at the close of the plaintiffs' testimony. Having done so, the judge went further to "consider the evidence as a whole." He explained to counsel that he was "trying to save [counsel] another trip back to the well." In this endeavor, the trial judge said he made "findings on the basis of the evidence as a whole, where I do weigh credibility and—determine credibility and weigh the evidence." He further explained: "Well, I'm saying that even when we come to the point of the—on the motion for directed verdict, that even if I considered in light most favorable to the plaintiffs and intervenor, what they understood, that that's not sufficient as a matter of law to get them over the bridge."

There are several unusual circumstances that make it difficult to review the "facts" of this case on appeal. One confounding circumstance is the trial judge's making alternative rulings. He granted the Simon Group's motion for a directed verdict, but he also took all the evidence into account as a fallback measure. When a motion

for directed verdict has been granted, this court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling was made. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 683, 829 P.2d 884 (1992). The trial judge did not make a statement of the evidence resolved against the Simon Group. This court is not in a position to review the evidence independently because the record on appeal does not contain a full trial transcript. "An appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails." *Smith v. Printup*, 254 Kan. 315, Syl. ¶ 14, 866 P.2d 985 (1993). When the trial court makes findings of fact and conclusions of law and enters judgment at the conclusion of the evidence, this court generally is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, Syl. ¶ 1, 855 P.2d 929 (1993). In this case, however, appellants do not challenge the trial judge's findings of fact. "Determinations of fact, unappealed from, are final and conclusive." *Justice v. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d 102, 109, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992). The trial judge in this case, however, generally failed to determine issues of credibility or to resolve inconsistent testimony except by inference. As a result, his "determinations of fact," which are unchallenged by the appellants, are more often than not merely recitals of who said what. With all this in mind, we turn to a patched-together account.

The district court stated aloud the following findings of fact:

"[The employees] understood that they were to monitor their radios during meal breaks, that they were expected to, and that, further, they were to respond to calls and to interrupt their meals if there was no one else available to respond to the situation that had developed, or if there was an emergency requiring more than the otherwise available officers. . . . [I]t's far and away very probable that [supervisors] Ms. Viles and Mr. Bates knew the plaintiffs were routinely monitoring their radios during meal breaks, and apparently took no action to instruct the plaintiffs to do otherwise."

Tim Learned's testimony that he was required to monitor the radio, that a response by him was required more often than not,

and that he was reprimanded for not responding to direct radio calls was not contradicted or rebutted.

The testimony of the other employees to the same effect was contradicted.

The meal breaks were to be taken when time permitted and with the supervisor's approval.

The employees were not required to remain on mall premises during meal breaks.

The remaining findings of fact were made by the trial judge from the bench by referring to the proposed findings filed by the parties. The trial judge expressly rejected the following two of the Simon Group's proposed findings of fact:

"34. Wolff also testified that Viles once told him that because the security guards screwed around so much, the extra half-hour on their shift 'didn't matter.' Viles denied ever having said this.

. . . .

"49. Wolff also testified that he had once spoken with Viles when she was crying, and that she had told him she was on medication and had trouble remembering things. Viles denied that this conversation ever took place. Viles further testified that she had not been to see a doctor in several years, and that she had never been on medication which caused her to forget things."

The trial judge rejected plaintiffs' proposed finding No. 5 on account of its including the phrase "at all times." The proposed finding states:

"5. A written policy required security officers to monitor their radios 'at all times.' Defendant's agents claim this policy did not apply to plaintiffs' meal breaks because there is an unwritten policy to that effect. Such claims are not credible, especially when neither supervisory official who testified could recall transmitting this information to any of the plaintiffs."

The trial judge adopted the following two of plaintiffs' proposed findings with the qualification that the subject was what plaintiffs believed or understood to have been the case rather than what they knew or what actually occurred:

"8. Although also in dispute, the Court finds by a preponderance of the evidence that all plaintiffs were directed to remain in radio contact whenever they took meal breaks; and all did so. Furthermore, the testimony of John Bates, Ms. Viles' supervisor, established he was aware security officers monitored their radios when they took meal breaks. It is also acknowledged by defendant's management the

security officers were directed not to be seen having lunch with certain people, including other officers or employees of retail stores in the Mall. Rick Wolff was told to avoid having his lunch break with a Mall employee he was dating in an area of the security office where it would not have been possible for the pair to be seen.

"9. All of the security officers and the intervenor were subject to emergency calls while they were on their meal breaks, and their failure to respond to a call while eating exposed them to disciplinary measures. Security officers remained in uniform and were expected to respond to crimes committed in their presence. They also were required to report contacts with shoppers that occurred during their meal breaks.

"The intervenor usually had lunch with his supervisors and other maintenance crew members while they remained in radio contact with a dispatcher. He also had to respond to calls for assistance whenever he was directed to do so by his supervisor."

With regard to plaintiffs' proposed finding No. 12, the trial judge stated:

"I think that they were permitted to monitor their radios and to feel like they were responsible for doing so and to respond to calls, even though Ms. Viles and Mr. Bates stated unequivocally that they had never said that to them, that they—there's no written policy, and no unwritten but spoken policy. They certainly knew that was happening, and they didn't do anything to disabuse the employees from having the understanding that they were expected to do those things."

The trial judge rejected proposed finding No. 13. We note that plaintiffs' counsel did not differentiate proposed findings of fact from proposed conclusions of law. It appears that Nos. 14-17 should be considered conclusions of law.

For ease of reference, the employee handbook provision for meal breaks is quoted here in pertinent part:

"If you are a full time employee you will receive a paid fifteen (15) minute rest break sometime during each half day of work. In addition, if you are scheduled for a full shift you will receive a one-half hour unpaid meal break during your work day. . . .

"Your breaks may be interrupted, or delayed, to respond to emergencies or pressing mall business, however, you will be allowed to complete your break, if business conditions will allow, as soon as the problem has been corrected.

"Lunches and breaks are scheduled by the supervisor or shift lead person who will determine when they are to be taken based on work load. DO NOT clock out and in for lunch breaks, unless you are leaving the property. A thirty minute

deduction will be taken automatically from your full work shift so that you don't have to use your time for clocking in and out at lunch time."

The following appears to be the Simon Group's proposed findings of fact which the trial judge seems to have "subscribed to": The principal complaint for each of the employees, except Sage, was that he was required to keep his radio on during meal breaks. Lancaster complained that he was required to monitor his radio during meal breaks, but he did not recall any specific incidents when his meal period was interrupted. He was allowed to have lunch with other security guards, and he was allowed to leave the premises during the meal break with no geographic limitations placed on his movements. He could, and sometimes did, eat in the mall, read, watch television, listen to the radio, and make telephone calls. The testimony of the other security guards echoed Lancaster's with one exception—Sage recalled no restrictions on meal periods, and he testified "that no one ever told him he had to leave his radio on during meal periods."

Learned, the maintenance worker, also complained that he was required to monitor the radio during his meal break. He testified that his lunch periods always lasted longer than half an hour, that he talked with his wife on the telephone for approximately 15 minutes and spent the remainder of his break in the break room with other maintenance and landscaping employees. He was able to leave the premises and run errands.

The sole issue on appeal is whether the "predominant benefit test" is the proper test to determine if meal break periods are compensable under the FLSA. We preface our discussion of this issue by noting that state and federal courts have concurrent jurisdiction of actions brought under the FLSA, 29 U.S.C. §§ 201 *et seq. Olson v. Rembrandt Printing Co.*, 375 F. Supp. 413, 417 (E.D. Mo. 1974).

As noted above, the plaintiffs do not challenge the trial judge's findings of fact. "Determinations of fact, unappealed from, are final and conclusive." *Justice v. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d at 109. "This court's review of conclusions of law is unlimited." *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The trial judge adopted various conclusions of law proposed by the Simon Group, but the crux of this case is stated in conclusion of law No. 20:

"This Court finds that plaintiffs were free to pursue their own interests during lunch periods. The meal periods were spent for the predominant benefit of plaintiffs and intervenor, and no violation of the FLSA has been shown. 29 C.F.R. § 785.19. *See also Lamon*, 972 F.2d at 1157-1158; *Armitage*, 982 F.2d at 432; *Burnison*, 820 F. Supp. at 557; *Brinkman*, 804 F. Supp. at 172; *Agner*, 8 Cl. Ct. at 638."

In resolving this appeal, we need to consider two subsections of 29 U.S.C. § 207—subsection (k), which is applicable to government employees providing fire protection and law enforcement personnel who have nontraditional working hours—and subsection (a)(1), which provides, in part:

"[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

29 C.F.R. § 785.19 (1997), which governs § 207(a)(1) employees, states in pertinent part:

"(a) . . . Bona fide meal periods are not worktime. . . . The employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. . . .

"(b) . . . It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."

29 C.F.R. § 553.223(b) (1997) provides, in part:

"If a public agency elects to use the section 7(k) exemption, the public agency may, in case of law enforcement personnel, exclude mealtime from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved of duty during meal periods, and all other tests in § 785.19 of this title are met."

*Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145 (10th Cir. 1992), *cert. denied* 507 U.S. 972 (1993), was an action by police officers to recover back pay for, among other things, being on duty during the meal period. Law enforcement and fire protection employees, whose work schedules typically do not fit the workweek method of

wage and time calculations, receive separate consideration under 29 U.S.C. § 207(k). The police officers in *Lamon* were subsection (k) employees. With regard to the applicable regulation, the Tenth Circuit Court of Appeals stated:

"Section 553.223(b) governs the compensability of meal periods, in the subsection (k) context, for law enforcement personnel working shifts of fewer than 24 hours. Like § 785.19, this section requires compensation for meal periods during which an employee is not 'completely relieved from duty.' Also, 553.223(b), by reference to § 785.19, mandates that uncompensated meal periods 'must be scheduled, occur at a regular time, and normally be thirty minutes or more.' *Lee v. Coahoma County*, 937 F.2d 220, 225 (5th Cir. 1991) (citing § 785.19 in discussing § 553.223). Not appearing in § 553.223(b), however, is § 785.19's statement: 'The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.' Furthermore, § 553.223(b) goes on to illustrate circumstances involving law enforcement personnel that would run afoul, if not compensated, of the 'completely relieved from duty' standard, citing the examples of personnel required to remain on call in barracks or similar quarters or assigned to extended surveillance duties, such as stakeouts. We find these differences instructive in determining the reach of the completely relieved from duty standard pursuant to § 553.223(b). Hence, a police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor. That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working. *See Lee*, 937 F.2d at 225; *Leahy v. City of Chicago*, 785 F. Supp. 724, 728-30 (N.D. Ill. 1992). Instead, consistent with the language of § 553.223(b) and with traditional principles underlying FLSA, a law enforcement employee is completely relieved from duty during a meal period, for purposes of § 553.223(b), when the employee's time is not spent predominantly for the benefit of the employer. *Cf. Renfro v. City of Emporia*, 948 F.2d 1529, 1538 (10th Cir. 1991), *cert. dismissed* [503 U.S. 915] (1992) (restrictions placed on on-call firefighters' personal pursuits created benefit to employer making time compensable under § 207 (k)); *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182, 1185 (10th Cir. 1989) (applying predominant benefit test to on-call power company employees, under § 207(a)); *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653, 654-55 (10th Cir. 1988) (considering extent to which on-call van drivers were able to pursue personal activity, in appeal of back wages claim under FLSA). If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under FLSA. Conversely, a police officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.

"As literally extracted from § 785.19, the trial court's instruction no. 10 deprived the jury of an ample understanding of the issues and standards of the case. The instruction countenanced the misapprehension that the performance of any official duty, no matter how insignificant, during meal periods rendered the time compensable. We reject that result." 972 F.2d at 1156-58.

Shortly after deciding *Lamon*, the Tenth Circuit reversed a district court's award of back pay to Emporia police detectives for lunch periods. *Armitage v. City of Emporia, Kan.*, 982 F.2d 430 (10th Cir. 1992). Explaining why the lower court's decision was in error, the Court of Appeals stated:

"Relying on two prior district court decisions, the district court held that the detectives should be compensated for their lunch periods because they 'were not completely relieved of duty.' *Wahl v. City of Wichita, Kansas*, 725 F. Supp. 1133 (D. Kan. 1989); *Nixon v. City of Junction, Kansas*, 707 F. Supp. 473 (D. Kan. 1988). However, we recently decided *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir. 1992), which sets forth the correct standard and requires a different outcome under these facts.

"In *Lamon* . . . [w]e held that the proper standard for determining compensability of a meal period is whether the officer is 'primarily . . . engaged in work-related duties during meal periods.' *Id.* at 1157. 'That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working.' *Id.* (citing *Lee v. Coahoma County, Mississippi*, 937 F.2d 220, 225 (5th Cir. 1991)." 982 F.2d at 431-32.

The plaintiffs in *Burnison v. Memorial Hosp., Inc.*, 820 F. Supp. 549 (D. Kan. 1993), were emergency medical technicians and paramedics. During meal periods, they were required to respond to emergency calls but were compensated if interrupted. They could leave the hospital and could patronize drive-through restaurants, but they were not permitted to park their ambulance and go inside a restaurant. *Burnison* is like the present case in that the plaintiffs were not government employees and the parties had stipulated that 29 C.F.R. § 758.19 rather than 29 C.F.R. § 553.223 applied. They argued that *Armitage* and *Lamon* should be distinguished on those grounds. The federal district court disagreed:

"Although not specifically discussed in the Tenth Circuit's opinion, the district court's opinion cites the § 785.19 regulation in its discussion of the meal period issue. *Armitage v. City of Emporia, Kan.*, 782 F. Supp. 537, 541 (D. Kan. 1992). More importantly, the court does not perceive any material difference between the standards governing the compensability of meal periods for cases where the

§ 785.19 regulation is applicable as opposed to cases where the § 553.223 regulation is applicable. We draw this conclusion from footnote 18 of the opinion of *Lamon*, wherein the court stated, '[o]ur contrasting of the two sections, § 553.223(b) and § 785.19, does not mean that the "completely relieved from duty" standard as used in the latter section should necessarily take on a different meaning than that of the former section. *See e.g., Hill v. United States*, 751 F.2d 810, 813-814 (6th Cir. 1984) (applying the predominate benefits test to meal periods of letter carrier under § 785.19).'

"Our conclusion is buttressed by the holding in *Armitage*, where the court held the meal periods noncompensable despite the fact that the plaintiffs were required to respond to questions from the public if approached and were subject to call. Here, the undisputed facts are that the plaintiffs did not have to perform any work-related duties during their lunch periods. They had limited responsibilities and restrictions (not being able to eat at home and having to eat in the ambulance *if* they chose to leave the hospital for lunch) but these reasonably related to their obligation to be on-call. Section 785.19, which is relied upon heavily by the plaintiffs, is only an advisory resource and, in any event, does not fit the facts of this case. The limited restrictions and responsibilities of the plaintiffs are not equivalent to an office employee who is required to eat at his or her desk or a factory worker who is required to eat at his machine. This court is obligated to follow the rulings of the Tenth Circuit and it believes the plaintiffs' situation is indistinguishable from *Armitage*. Therefore, the court holds the in-shift meal periods are noncompensable under the FLSA." 820 F. Supp. at 557.

*Brinkman v. Dept. of Corr. of State of Kan.*, 804 F. Supp. 163 (D. Kan. 1992), *aff'd* 21 F.3d 370 (10th Cir.), *cert. denied* 513 U.S. 927 (1994), was decided before the Tenth Circuit issued its decision in *Armitage*. Corrections officers at the Lansing Correctional Facility alleged that their half-hour break period was compensable work time rather than a bona fide meal period. The employees relied on the district courts' decisions in *Armitage*, *Lamon*, *Wahl*, and *Nixon*. Focusing on recent developments, the trial judge stated:

"The Tenth Circuit recently placed in doubt much of this district's case law on the meal period test under FLSA. In *Lamon*, the plaintiffs were police officers employed under a 28-day work period scheme available under § 207(k). . . .

. . . .

"The district court's instruction on meal periods repeated much of the critical language from 29 C.F.R. § 785.19. The Tenth Circuit said the district court should have looked instead to 29 C.F.R. § 553.223(b). The Tenth Circuit believed this specific regulation, rather than the general meal period regulation of § 785.19, was controlling of a compensability question of meal periods in the subsection (k)

context. *Lamon*, 972 F.2d at 1156. In contrasting § 785.19 and § 553.223(b), the Tenth Circuit found two differences which were important in its mind. First, § 553.223(b) did not include the following sentence from § 785.19: 'The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.' The other was the illustrations found in § 553.223(b) of a meal period being compensable when a law enforcement officer is forced to remain on call in barracks or is assigned to extended surveillance." 804 F. Supp. at 169-70.

Nonetheless, the trial judge drew the following conclusion:

"This court believes *Lamon* strongly implies that the 'completely relieved from duty' standard appearing in both § 553.223(b) and § 785.19 has the same meaning. The two distinctions observed between § 553.223(b) and § 785.19 are insubstantial reasons for reading identical words differently in almost indistinguishable contexts. No rationale for having a less rigorous meal period standard for an employee covered under § 207(k) is offered in *Lamon*. Section 207(k) obviously is intended to address the unique employment circumstances of a law enforcement officer, fire fighter, or corrections officer. Presumably, the same circumstances justify taking the same approach to meal period times for those similarly employed whether covered by § 207(k) or not. The court feels compelled to apply the standards articulated in *Lamon* to this case." 804 F. Supp. at 171.

Further commenting on its reading of *Lamon*, the federal district court stated:

"What the Tenth Circuit did in *Lamon* was to remind us that the regulatory standard, 'completely relieved from duty,' cannot be applied singularly or be divorced from the traditional principles underlying FLSA. Who predominantly benefits from how an employee spends his time is the overriding question of whether the employee is working." 804 F. Supp. at 172.

"Administrative regulations 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944)." 804 F. Supp. at 172 n.10. In the end, the court declined to enter summary judgment on the ground that it was precluded by genuine issues of material facts from saying "as a matter of law that the meal breaks predominantly benefit the defendant." 804 F. Supp. at 173.

Some circumstances in *Brinkman* were uncontroverted:

"[T]he plaintiff officers are given a thirty-minute break period which is not counted as hours worked on time sheets and is not calculated as part of any compensation. . . .

"While on their thirty-minute break, the plaintiff correction officers are subject to a number of restrictions. Breaks are to be taken during the middle six hours of a shift. Two break rooms are available. The time it takes them to walk from their post to the break room is part of their break time. They are required to record when they leave for and return from break. They must remain in uniform. They are not permitted to leave the grounds of the facility or to visit their automobiles at their own discretion They may not move from their assigned compound to another without permission. They may walk immediately outside the compound. They are not allowed to take breaks at their duty posts or to contact other officers who are not on break. They are not allowed to bring reading material identified as 'contraband' into the break room. They are subject to recall for emergency alarms, and if they become aware of an alarm then they are expected to respond. They may be disciplined for not reporting when recalled during break. Officers are expected both to report any inmate violations and to intervene in any inmate disturbances that are observed during break. Outside visitors, such as family members, are not allowed inside or outside the facility." 804 F. Supp. at 168.

## Footnote 2 states:

"There are other restrictive circumstances that the plaintiffs submit exist, but they are controverted. Judgment may be entered as a matter of law only if sustained by the uncontroverted facts. Factual disputes that are immaterial under the substantive law do not preclude summary judgment. *See Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1533 (10th Cir. 1991)." 804 F. Supp. at 168.

## Among those circumstances in question were

"the existence and extent of any restrictions on discussing union or political matters or in reading certain literature or materials; the defendant's knowledge and tolerance of some plaintiffs' carrying and monitoring their radios during break; the nature and extent of the plaintiffs' continued observation of prisoners while on break; the relationship that these monitoring and observing duties bear to the plaintiffs' principal work activity; the availability of sleeping on break considering any rules or other prohibitive circumstances; the frequency of emergency calls interrupting break; and the consistency with which these meal breaks were given." 804 F. Supp. at 173.

The trial judge eventually entered judgment on a jury verdict for the corrections officers, and the Tenth Circuit affirmed. *Brinkman v. Dept. of Corr. of State of Kan.*, 21 F.3d 370 (10th Cir. 1994). The jury determined not only that the Department of Corrections violated the FLSA, but it also determined that the violation was

willful, thereby extending the limitations period from 2 to 3 years. 21 F.3d at 372. On appeal, the employer did not challenge the jury's finding that the uncompensated half-hour break constituted a violation of the FLSA. Nor did the employer argue that the evidence was insufficient to support the jury's finding of a willful violation. 21 F.3d 372-73.

In the present case, appellants state that their argument

"with the trial court lies strictly over whether or not Judge Friedel should have determined the present status of the law requires him to use the 'predominate benefit' [sic] test of the most recent Kansas and Tenth Circuit rulings rather than follow the explicit language of 29 C.F.R. § 785.19 that says: 'The employee is not relieved from duty if he is required to perform any duties, whether active or inactive, while eating.' "

Appellants do not attempt to establish an authoritative status for administrative regulations. Nor do they suggest that the federal court cases from the District of Kansas and the Tenth Circuit Court of Appeals ought not be persuasive authority for this court's consideration of a cause of action arising under federal legislation. As we have seen, in *Brinkman* the district court quoted *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944), for the proposition that instead of being controlling authorities, administrative regulations provide guidance to the courts. 804 F. Supp. at 172 n.10. The rule generally followed by this court with respect to properly adopted state administrative regulations is that they have the force and effect of statutes, *Murphy v. Nelson*, 260 Kan. 589, 595, 921 P.2d 1225 (1996), and, like statutes, regulations are subject to certain rules of construction. Both this court and federal courts "strive for a reasonable interpretation or construction of a statute or regulation which avoids an unreasonable or absurd result." 260 Kan. 589, Syl. ¶ 3. The interpretation currently given to the administrative regulations concerning employees' meal breaks by the federal courts in this state and in the Tenth Circuit is less literal than appellants advocate, but does not seem to be unreasonable.

Appellants have not furthered their cause by directing the court's attention to cases from any other districts or circuits in which 29 C.F.R. § 785.19 is interpreted as they would have it. The single

authority they cite is *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 63 L. Ed. 2d 22, 100 S. Ct. 790 (1980): "[J]udges are not accredited to supersede Congress or the appropriate agency by embellishing upon the regulatory scheme." The subject of the Supreme Court's observation was the legislation and regulation governing commerce in credit, a field in which courts particularly heed the lawmakers:

"[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive for several reasons.

". . . [T]raditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in 'setting [the statutory] machinery in motion. . . .' [Citation omitted.] . . . Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA. The Act is best construed by those who gave it substance in promulgating regulations thereunder." 444 U.S. at 565-66.

Nothing has been called to this court's attention that would suggest the same degree of deference is due regulation in the field of labor standards. Moreover, as noted by the Simon Group, this court's recent consideration in *Stone v. City of Kiowa*, 263 Kan. 502, 950 P.2d 1305 (1997), of the related issue of on-call compensation for law enforcement officers included discussion of the predominant benefit test.

It seems, therefore, that the predominant benefit test, which the trial judge derived from the recent federal cases from this district and circuit, is the correct one. The question to be posed is "Who predominantly benefited from how the employees spent their meal break time?" In the present case, there is the peculiar circumstance of the employees' perceptions of what was required of them not precisely matching actual requirements. By posing the question in this way, the court will be considering how the employees actually spent their time, thus giving them the "benefit" of their misperceptions.

There is no question that the employees in this case performed some service for the employer during meal breaks by monitoring their radios and making themselves available to respond when nec-

essary. Providing this service, however, does not seem to have eclipsed the central purpose of the break as a time for the employees to relax and eat. On occasions when the employees were deprived of their time to relax and eat because they responded to calls, they were eligible for compensation and needed only to make note the occasion on the time card. Thus, it would appear that the employees, rather than the employer, predominantly benefited from how they spent their meal break time.

Finally, with respect to liability, the employees contend that accurate records of their meal break activities would show the extent of their duties and that responsibility for keeping the records lies with the employer. Due to the Simon Group's failure to fulfill its recordkeeping duty, the argument continues, the employees cannot prove their case. Thus, they would have the court conclude, the court must rule in their favor. This argument has no merit where, as here, the employees' own accounts of how they spent their meal breaks do not support their claims.

The judgment of the district court is affirmed.