(31 P.3d 290)
No. 84,135

SALON ENTERPRISES, INC., *Appellant*, v. TOPAZE LANGFORD, *Appellee*.

Opinion filed December 29, 2000.

*Thomas Kelly Ryan*, of Gates, Biles, Shields & Ryan, P.A., of Overland Park, for the appellant.

*Allan E. Coon* and *Gregory D. Kincaid*, of Norton, Hubbard, Ruzicka & Kreamer, L.C., of Olathe, for the appellee.

Before LEWIS, P.J., RULON, C.J., and GLENN D. SCHIFFNER, District Judge, assigned.

SCHIFFNER, C.J.: Salon Enterprises, Inc., d/b/a Par Exsalonce Hair Salon (Par Exsalonce) appeals from the ruling of the trial court that Par Exsalonce violated the Kansas Wage Payment Act (KWPA), K.S.A. 44-312 *et seq.*, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 (1994) *et seq.*

Joan and Ronald Sandstrom are the owners and directors of Par Exsalonce. In November 1992, Par Exsalonce hired Topaze Langford as a hairstylist. No written employment agreement was entered into although Langford signed a form prepared pro se by Par Exsalonce agreeing not to work within 5 miles of Par Exsalonce for a 2-year period in the event she terminated her employment.

Pursuant to the oral agreement of the parties, Par Exsalonce was to deduct a 6% overhead from the total amount of money generated by Langford and then pay her a 50% commission on the balance. The overhead amount was later reduced to 5%. Langford also received a 10% commission on her retail product sales.

In January 1994, Par Exsalonce modified its pay plan. Under the new plan, Langford's compensation was calculated weekly, and she received commissions on retail and service revenues pursuant to a graduated scale. The commissions ranged from 50% to 60% after 5% for overhead expenses was subtracted from the total dollars she generated. Her retail product sales commission ranged from 10% to 15%, depending on the dollar level of her retail sales. Langford signed a document on January 15, 1994, entitled "Compensation Schedule" that contained the terms of the new pay plan but provided for nothing else.

Because of the increasing costs for retail hair products, Par Exsalonce instituted a new pay plan in June 1997 for all of its stylists. The 1997 plan increased the overhead percentage from 5% to 10% if a stylist failed to sell retail products amounting to at least 15% of his or her gross amount of revenue generated from services for

the entire month. The commission was calculated monthly. Par Exsalonce reverted to its previous pay plan in January 1998.

Par Exsalonce informed the affected stylists of the new pay plan prior to its implementation and prior to the earnings by the stylists of any commissions affected by the plan. The plan was not in writing, and although Langford continued to work for Par Exsalonce, she objected to the plan, claiming that it was unfair and that a 10% deduction from gross service revenues was excessive.

Langford left Par Exsalonce in February 1998 and began working at another salon within 5 miles of Par Exsalonce. Par Exsalonce filed suit against Langford for breach of contract and against her new employer for tortious interference with a business relationship. Langford asserted counterclaims alleging Par Exsalonce had wrongfully withheld wages in violation of the KWPA and had failed to pay her overtime in violation of the FLSA.

The trial court dismissed Par Exsalonce's claim against Langford's employer with prejudice. Following a bench trial, the trial court denied Par Exsalonce's breach of contract claim, finding the covenant not to compete to be unenforceable.

The trial court found Par Exsalonce had wrongfully withheld wages of $369.80. It found that the withholding was intentional and that Langford was entitled to $739.40 in damages under K.S.A. 44-315(b). The trial court also found Par Exsalonce had violated the FLSA. However, because Langford failed to prove the number of overtime hours she had worked, it awarded Langford nominal damages of $1 and an amount for attorney fees to be assessed after a separate hearing. Langford was subsequently awarded $1,000 in attorney fees for the FLSA violation. Par Exsalonce timely appealed.

Par Exsalonce first argues the trial court erred in concluding it violated the KWPA, citing *Alkire v. Fissell*, 23 Kan. App. 2d 487, 932 P.2d 1034 (1997), which held that the KWPA does not address wage or pay cuts for at-will employees. Langford asserted at trial that Par Exsalonce unilaterally modified the terms of her compensation structure and wrongfully withheld her wages in violation of the KWPA. This case involves the interpretation of statutes, and

this court's review is unlimited. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

Langford relies upon K.S.A. 44-319(a), which states:

"No employer may withhold, deduct or divert any portion of an employee's wages unless: (1) The employer is required or empowered to do so by state or federal law; (2) the deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employer's books; or (3) the employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee."

The basic issue in this case is in the determination of what constituted Langford's "wages" and, therefore, whether Par Exsalonce's 1997 pay plan constituted a wage or pay cut for an at-will employee per Par Exsalonce's argument or wrongfully withheld Langford's wages in violation of the KWPA per Langford's argument.

K.S.A. 44-313(c) provides: " 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."

The facts are not in dispute. Langford was an at-will employee as was determined by the trial court. Langford's wage was commission based. Her wage constituted the commission she was paid on the balance of the gross revenues she generated less an overhead percentage. The 1997 pay plan was announced before any wages were earned. Changing the amount of the overhead percentage constituted a wage or pay cut as opposed to a wrongful withholding of wages. K.S.A. 44-319(a) does not prohibit at-will employee pay cuts announced before wages are earned; therefore, Par Exsalonce's 1997 pay plan was not violative of the KWPA. The trial court's findings on this point are not supported by the record, and its legal conclusion is incorrect.

Par Exsalonce next argues the trial court erred in concluding it violated the FLSA. It argues the evidence was insufficient to establish Langford worked more than 40 hours per week. It also argues it was not required to pay Langford overtime under 29 U.S.C. § 207(i).

29 U.S.C. § 207(a)(1) states:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

In ruling from the bench that Par Exsalonce had violated the FLSA, the trial court stated:

"[T]he lunch hours count . . . [T]he testimony is if you're having lunch and someone walks in, you get up and go cut their hair . . . . I don't know how you do operate one of these places unless you make people leave the shop for lunch hour. And it - I mean, frankly, it just doesn't make sense because in many instances the hairstylist would probably rather work through the lunch hour and make the money than they would have lunch. . . .

"With respect to this overtime issue, I'm going to find that the evidence, by a preponderance of the evidence, establishes that [Langford] in this case at various times worked in excess of 40 hours per week and was not compensated in compliance with the federal regulations."

The trial court stated the following in its journal entry:

"D. The Plaintiff paid the Defendant in part by commission (for products sold) and in part by task or piece-meal.

"E. The Plaintiff, by making its employees available to work over lunch, even though not always requiring them to do so, violated the [FLSA] by failing to pay any overtime compensation.

"F. By a preponderance of the evidence, the Court finds that Defendant worked more than 40 hours in a workweek and was not compensated for such overtime work."

Langford asserted at trial that on occasion she had worked extra hours before and after her scheduled shifts as well as during her meal breaks. Nevertheless, the trial court's ruling was clearly based on evidence relating to the time Langford worked during her meal breaks.

The trial court erred in stating that Par Exsalonce violated the FLSA "by making its employees available to work over lunch, even though not always requiring them to do so." Recently, in *Powell v. Simon Mgt. Group, L.P.*, 265 Kan. 197, 960 P.2d 212 (1998), the

Supreme Court set forth the applicable test for determining whether a meal break period is compensable under the FLSA. It quoted the pertinent federal regulation as follows:

"29 C.F.R. § 785.19 (1997), which governs § 207(a)(1) employees, states in pertinent part:

" '(a) . . . Bona fide meal periods are not worktime . . . . The employee must be completely relieved from duty for the purposes of eating regular meals . . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. . . .

" '(b) . . . It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.' " 265 Kan. at 203.

Based on interpretation of the statute and regulation by federal courts, the Supreme Court adopted the predominant benefit test: "The test to determine if meal break periods are compensable under the Fair Labor Standards Act is whether the employee's time is spent predominantly for the employer's benefit or for the employee's." 265 Kan. 197, Syl. ¶ 1. The employees in *Powell* (security officers and a maintenance worker) were required to provide some service for their employer during meal breaks by monitoring their radios and making themselves available to respond to calls. In affirming the district court's conclusion that the employer had not violated the FLSA by not paying overtime for meal periods, the court stated:

"Providing the service, however, does not seem to have eclipsed the central purpose of the break as a time for the employees to relax and eat. On occasions when the employees were deprived of their time to relax and eat because they responded to calls, they were eligible for compensation and needed only to make note the occasion on the time card. Thus, it would appear that the employees, rather than the employer, predominantly benefited from how they spent their meal break time." 265 Kan. at 211.

Thus, an employer who merely requires an employee to be available for work during a meal break does not violate the FLSA. Further, the evidence did not establish that Langford was required to be available during her meal break. Joan testified Langford was given time for meal breaks and any time Langford worked during her breaks was by choice. Langford's testimony merely indicated she was available to work during her meal break and, at times, she

cut hair during her break. Like the employees in *Powell*, Langford was compensated for the occasions she worked during her lunch break and thus benefited from how she spent that time.

Moreover, the evidence did not establish that Langford worked more than 40 hours per week because she was deprived of her break time. Langford testified that, on occasion, she worked more than 40 hours in a week. She stated that prior to May 1997, there were many instances when she worked more than 40 hours in a week. She attributed the extra hours to time spent conducting educational classes, attending meetings, performing clean-up work, and cutting hair for walk-ins during lunch or after the end of her shift. However, the record does not establish that Langford was scheduled to work a set number of hours per week, and the length of her mealtime break apparently varied on a daily basis.

For example, Langford presented the trial court with a work schedule for hours she worked over a 2-week period in December 1997. During the first week, she worked 36 hours with daily shifts ranging from 8 to 10 hours a day. For the second week, the schedule showed Langford worked 42 hours with daily shifts ranging from 8 to 9 hours. She testified that on 2 of the days, she worked during her meal breaks. On the other days, her breaks lasted 45 minutes to an hour. After subtracting time taken for meal breaks, Langford worked 38 hours during the second week. No other evidence was presented relating to the specific number of hours Langford worked each week or the number of hours worked during her meal breaks. Thus, it is not possible to ascertain if work during meal breaks caused Langford to work more than 40-hour weeks.

To support a claim for overtime compensation under the FLSA, the employee must show that he or she "actually worked overtime, that the amount of overtime was shown by justifiable and reasonable inference, and the employer had actual or constructive knowledge of the overtime." *Slattery v. HCA Wesley Rehabilitation Hosp., Inc.*, 83 F. Supp. 2d 1224, 1230 (D. Kan. 2000). Further,

"[a] complaint for unpaid wages should state both the workweeks for which compensation is claimed and the number of hours worked per week in sufficient detail to permit the defendant to properly prepare responsive pleadings. A plaintiff who

is unable to state sufficient detail must state the reason for his inability to do so." 48A Am. Jur. 2d, Labor and Labor Relations § 4578, p. 1098.

Langford's testimony that, in general, she had worked more than 40 hours during unidentifiable workweeks was insufficient to establish Par Exsalonce had violated the FLSA. The record does not show that she posited any reason for her inability to establish a proper claim.

The trial court's findings on this point are not supported by the record, and its legal conclusion is incorrect.

In its closing argument, Par Exsalonce argued it was not required to pay Langford overtime under 29 U.S.C. § 207(i) since Langford was a commission employee and her regular rate of pay exceeded the statutory requirement for exemption. 29 U.S.C. § 207(i) states:

"No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee."

The employer bears the burden of showing the employee falls under an exemption of the FLSA, and courts must narrowly construe the exemption. *Szymula v. Ash Grove Cement Co.,* 941 F. Supp. 1032, 1037 (D. Kan. 1996); *Bush v. Wilson & Co.,* 157 Kan. 82, 89, 138 P.2d 457 (1943).

Presumably, the trial court did not discuss § 207(i) at trial or in its journal entry because it found Langford was paid in part by task or piece meal. The trial court apparently distinguished commissions Langford received for her retail product sales from her receipt of commissions for her performance of services and concluded her income received from the performance of services was not a "commission" under 29 U.S.C. § 207(i).

Federal regulations provide "guiding principles for determining whether an employee's employment and compensation meet the

conditions set forth in section 7(i)." 29 C.F.R. § 779.410 (2000). The regulations indicate that the exemption includes earnings generated by employees who perform and sell services. One regulation states:

"Although typically in retail or service establishments commission payments are keyed to sales, the requirement of [§ 207(i)(2)] is that more than half the employee's compensation represent commissions 'on goods or services,' which would include all types of commissions customarily based on the goods or services which the establishment sells, and not exclusively those measured by 'sales' of these goods or services." 29 C.F.R. § 779.413(b) (2000).

Another regulation describes a "bona fide commission rate" as one that "var[ies] in accordance with the employee's performance on the job." 29 C.F.R. § 779.416(b) (2000). Further, federal courts have interpreted the statute as including commissions for performance of services. See *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177 (7th Cir. 1987).

A plain reading of the term "commission on . . . services" includes earnings generated by employees who perform and sell services. Black's Law Dictionary 1167 (7th ed. 1999), defines "piecework" as "[w]ork done or paid for by the piece or job." Although Langford's rate of pay was tied to the number of haircuts performed, she was not paid a flat rate for each haircut. Rather, her compensation was based on a percentage of revenues generated from services she performed. There was no evidence that she generated the same revenue from each customer. The trial court incorrectly found Langford was paid on a piece rate basis.

As indicated, Par Exsalonce had the burden to establish that the exemption was applicable. In order for the exemption to apply, the employee must be employed by a retail or service establishment. Beauty shops and barber shops are recognized as having the characteristics of a retail or service establishment. See 29 C.F.R. § 779.318(a) (2000); 29 C.F.R. § 779.320 (2000). A retail or service establishment is defined as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 C.F.R. § 779.411 (2000).

Ronald testified that all revenues at Par Exsalonce were generated by the services provided to customers and the sale of retail products. Thus, under § 207(i), the trial court was required to determine whether Langford's regular rate of pay was in excess of 1½ times the minimum hourly rate applicable under the minimum wage provisions of § 206. In its argument to the trial court, Par Exsalonce's attorney looked to the week in December 1997 where Langford claimed to have worked 42 hours. He stated the applicable rate of pay was $5.15 an hour, which would equate to $206 for a 40-hour week. The attorney multiplied $7.73 for the 2 hours of overtime, for a total of $221.46. Since Langford had earned $562.57 that week, he argued the exemption applied.

The method of calculating Langford's regular rate of pay used by Par Exsalonce's attorney was incorrect. Under the statute, if Langford's minimum rate of pay was $5.15 an hour then her regular rate of pay must be more than 1½ times that amount or $7.73 an hour in order to qualify for the exemption. See 29 C.F.R. § 779.419(b) (2000). Based on the $562.57 weekly earnings figure, Langford's rate of pay was $13.39 an hour, which was clearly in excess of the exemption requirement.

The evidence showed Par Exsalonce was not required to pay Langford overtime for a particular week under the exemption, and it is likely that Par Exsalonce was not required to pay Langford overtime under 29 U.S.C. § 207(i) for the duration of her employment. As noted by the trial court, Langford failed to establish when she had worked overtime during her 5-year tenure at Par Exsalonce and the number of overtime hours she had worked. Because of this failure, it was not possible for Par Exsalonce to show Langford's regular rate of pay for a certain period exceeded 1½ times the applicable minimum hourly rate.

The trial court's ruling that Par Exsalonce violated the FLSA should be reversed as should its order awarding Langford $1,000 in attorney fees based on the FLSA violation.

Reversed.