(316 P.3d 790)

No. 109,084

LANA SMITH, *Appellant*, v. KANSAS ORTHOPAEDIC CENTER, P.A., *Appellee*.

Opinion filed December 27, 2013.

*Jim Lawing*, of Wichita, for appellant.

*Boyd A. Byers* and *Amelia G. Yowell*, of Foulston Siefkin LLP, of Wichita, for appellee.

Before MALONE, C.J., LEBEN and ARNOLD-BURGER, JJ.

LEBEN, J.: In 2007, Lana Smith began work as a physical therapist for a Wichita medical practice. After she left its employment, she sued for bonuses she said were owed to her. Smith said that the practice's business manager promised her a minimum $10,000 per year bonus before she began work.

But Smith's employment agreement also clearly provided that she was an at-will employee, something she has not contested, and the compensation of at-will employees may be changed on a going-forward basis. Her employer announced new compensation terms during 2008, paid her more than $10,000 in bonuses for 2008, and applied the new compensation terms to bonuses in later years. By staying on after new compensation terms are announced for future compensation, an at-will employee impliedly accepts those terms. Accordingly, the district court properly granted summary judgment against Smith's claim for additional bonuses from 2009 until she ended her employment in 2011.

## FACTUAL AND PROCEDURAL BACKGROUND

While Smith was employed by another Wichita medical practice,

she applied for a physical-therapist position with Kansas Ortho-
paedic Center, P.A. She signed an employment application that
said she understood that she would be an at-will employee and that
no one acting for the company could bind it to anything to the
contrary:

"I understand that, if hired, my employment will be at-will and may be terminated
for any reason, with or without cause, at any time at my option or by the company.
I understand that no employee, officer or agent of the company may bind it to
anything contrary to the above by oral or printed statements, including handbooks,
benefits booklets, or other forms of communication. I agree to conform to the
rules and regulations of the company. I acknowledge that the company retains
the right to revise its policies or procedures, in whole or in part, at any time."

The next month, Kansas Orthopaedic Center's business man-
ager, Liz Tolberd, contacted Smith to say that the practice was
interested in hiring her. Tolberd and Smith discussed potential
work schedules and compensation packages. Smith rejected an in-
itial offer, but accepted a later offer of a starting salary of $70,000
with a guaranteed bonus of $10,000. Tolberd later said that the
bonus guarantee had been limited to the first year, but Smith said
she didn't recall such a limitation.

Tolberd confirmed the terms in a letter to Smith, which listed a
starting date of November 1, 2007, and said, "Annual Salary:
$70,000 with a bonus guarantee of $10,000." The letter also noted
that there would be a performance evaluation after 90 days "with-
out pay increase" and merit evaluations annually "with the poten-
tial of a salary adjustment on or about the anniversary date." The
letter made no mention of any term of employment.

On Smith's first day of work, she received a personnel policy
manual. It referenced more than once that her employment was
"at will," could be terminated at any time by her or the practice—
with or without notice, and that the practice could change the
terms of its personnel manual at any time:

"I have reviewed a copy of the company Personnel Policy Manual dated 9/1/03.
I have read and understand the guidelines, policies, and procedures presented
herein. I realize that this manual is a notification of Kansas Orthopaedic Center,
P.A.'s (KOC, P.A.) guidelines, policies, and procedures. I understand that this
manual is not intended to create any contractual rights in favor of KOC, P.A., or
me. I also understand that it is not to be construed as a guarantee of employment

for any specific period of time, for any specific type of work, or for any specific term. *I agree that my employment is 'at will' and may be terminated at any time by either KOC, P.A., or me, with or without cause, and with or without notice.*

"I understand that neither the personnel policies contained in this manual, nor any other written or oral statement by the company or its representatives are contracts of employment. *No employee of KOC, P.A.*, other than the President *has any authority to enter into* any agreement for employment for any specific period of time, or *an agreement contrary to the employment-at-will policy, and no such agreement has been made.*

"I acknowledge my responsibility to become familiar with the terms of this manual, and further acknowledge that *KOC, P.A., may change the terms of this manual without notice and at any time*, and that any written notices of changes furnished to me should be kept with this manual as a record of current guidelines, policies, and procedures until a revised manual is issued." (Emphasis added.)

In April 2008, Kansas Orthopaedic Center changed its bonus plan and provided Smith a copy. The revised plan provided that therapists would receive a quarterly bonus equal to 15% of their receipts for therapy services in excess of $45,000. For part-time employees, the plan provided for bonsues in a prorated amount based on the percentage of full-time employment. Smith understood that Kansas Orthopaedic Center was changing its bonus policy, and she continued to work there.

In June 2008, management and therapists at Kansas Orthopaedic Center discussed the therapists' desire to switch from working 8 hours per day 5 days per week to working 10 hours per day 4 days per week. Management representatives suggested that this would likely reduce a therapist's productivity and thus reduce her bonus. But the therapists preferred the 4-day-a-week schedule, and it was implemented in March 2009; Smith moved to that schedule. In February 2010, the therapists were given the option to return to an 8-hour-per-day, 5-days-per-week schedule, but they declined.

Smith took a 12-week paid leave of absence in March 2010 for the birth of her son. When she returned to work in June 2010, she and her employer agreed that she could reduce her work to 4 8-hour days per week; her salary was reduced accordingly. In August 2011, she moved to a 39-hour-per-week schedule; her salary was again adjusted.

In November 2011, Smith gave notice that she would leave in 6 weeks to take a new job. Her last day of employment with Kansas Orthopaedic Center was December 14, 2011.

She had been paid a bonus of $12,522 in 2008, but her bonuses for later years were all less than $10,000: $6,412 in 2009; $1,854 in 2010; and $1,598 in 2011. The number of services billed by her declined after her first year as well: 10,849 in 2008, 9,283 in 2009, 5,193 in 2010, and 6,351 in 2011.

In February 2012, Smith sued for breach of contract, claiming that Kansas Orthopaedic Center had guaranteed her a bonus of $10,000 for every year of her employment. She claimed as damages the amounts needed to boost her bonus in each year from 2009 through 2011 to $10,000 each—a total of $20,136—plus interest.

Kansas Orthopaedic Center moved for summary judgment, contending that Smith was an at-will employee and that the letter Tolberd wrote to Smith did not obligate it to pay a $10,000 bonus throughout Smith's employment. Smith claimed that the parties either had an implied-in-fact contract or that she had accepted a unilateral contract that guaranteed a $10,000 annual bonus as long as she worked there. The district court granted summary judgment to Kansas Orthopaedic Center, and Smith appealed to this court.

On appeal, we review the matter independently, without any required deference to the district court. See *Hansford v. Silver Lake Heights*, 294 Kan. 707, 710, 280 P.3d 756 (2012). Summary judgment is appropriate only when the pleadings and evidence presented to the court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 (2012).

ANALYSIS

We begin our analysis with the nature of Smith's employment: she was an at-will employee. As a general rule, an at-will employee may be fired at any time for any reason. See *Campbell v. Husky Hogs*, 292 Kan. 225, 227-28, 255 P.3d 1 (2011); Worth & Landis, *Fire at Will? The Status of Judicially Created Exceptions to Employment-at-Will in Kansas*, 64 J.K.B.A. 22 (Feb./Mar. 1995).

There are public-policy exceptions, such as that an employee can't be fired for filing a complaint under employment-discrimination laws, but Smith doesn't argue that any public-policy exception applies to her case. Moreover, the employment application and the personnel policy manual she got before and when she began her employment clearly explained that her employment could be terminated either by her or by the employer at any time, with or without cause.

Logically, the nature of at-will employment, *i.e.*, that either party can end it at any time for any reason, has a corollary: either party can announce new terms to apply going forward. As the Oregon Court of Appeals has said, if the employment is at will, "[i]t follows that an employer may also modify the employment contract so long as the modification applies only prospectively. An employe[e] impliedly accepts such modifications by continuing employment after the modification." *Albrant v. Sterling Furniture Co.*, 85 Or. App. 272, 278, 736 P.2d 201, *rev. denied* 304 Or. 55 (1987); accord *Kauffman v. IBT*, 950 A.2d 44, 47-48 (D.C. App. 2008); *Stieber v. Journal Pub. Co.*, 120 N.M. 270, 273, 901 P.2d 201 (N.M. App. 1995); *Duncan v. Alaska USA Fed. Credit Union*, 148 Wash. App. 52, 76-78, 199 P.3d 991 (2008).

The power to terminate the employment relationship necessarily includes the power to change the terms of employment so long as it is done prospectively and the employee is notified of the changed terms. See *Anthony Marano Co. v. Passoff*, No. 1-11-2853, 2012 WL 6861752, at *9 (Ill. App. 2012) (unpublished opinion); *Malone v. American Bus. Info.*, 264 Neb. 127, 135, 647 N.W.2d 569 (2002); *Stieber*, 120 N.M. at 273; *Gormley v. Coca-Cola Enterprises*, 135 N.M. 128, 135, 85 P.3d 252 (N.M. App. 2003), *aff'd* 137 N.M. 192, 109 P.3d 280 (2005); Thus, an employer can make prospective changes to compensation or commissions. *Geary v. Telular Corp.*, 341 Ill. App. 3d 694, 698-99, 793 N.E.2d 128 (2003). In our case, Smith agrees that she knew of the change made to the bonus-compensation plan, and she continued to work for Kansas Orthopaedic Center for several years afterwards.

Sometimes an employment-at-will relationship will become something more permanent—not subject to termination without

cause by the employer—because some representation made by the employer will be held to have created an "implied-in-fact" contract. See Worth & Landis, 64 J.K.B.A. at 23-30. Smith hasn't argued that on appeal.

Instead, she claims that a "unilateral contract" was formed when she began work after receiving the offer for a guaranteed bonus of $10,000 per year. In a unilateral contract, one party makes a promise in exchange for the other party's performance rather than a corresponding promise. A classic example of a unilateral contract involves one person who says to another, " 'If you will walk across the Brooklyn Bridge I will pay you $100." The person making the promise wants performance in return, not merely the promise of action. The contract is formed when the second person performs by walking across the bridge. In such a contract, since only one party has made a promise (here, to pay if the other party walks across the bridge), only the party who made the promise has a legal obligation. The other party can choose to walk across the bridge or not. See Calamari & Perillo, Contracts § 2.10 (4th ed. 1998).

But it's not clear that the concept of a unilateral contract is of any real importance in deciding our case. Even if the initial employment contract between Smith and her employer is characterized as unilateral, that doesn't change the nature of Smith's employment from employment at will to something else. Even if an at-will employment begins under a unilateral contract, the terms of an employment-at-will relationship still may be changed so that "where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation." *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983). In fact, if one applies unilateral-contract analysis, the at-will employee's performance—after announcement (or promise) of the new terms of employment—operates to accept those new terms. 333 N.W.2d at 626-27.

Kansas Orthopaedic Center makes several arguments on appeal; one of them is that the employer in an at-will employment can change the compensation on a prospective basis. In support, Kansas Orthopaedic Center cites *Salon Enterprises, Inc. v. Langford*, 29 Kan. App. 2d 268, 31 P.3d 290 (2000), in which an employer

changed the commission-based compensation for an at-will employee. The employee sued for back wages under the Kansas Wage Payment Act, but our court determined that nothing in that statute prohibited changing the commission plan for at-will employees as long as the change was announced before the wages were earned. 29 Kan. App. 2d at 271. That case—and Kansas Orthopaedic Center's corresponding argument—are fully consistent with the principles we discussed earlier in this opinion: the compensation plan for an at-will employee is subject to change.

Of course, summary judgment can only be granted where there are no material facts in dispute, so we should consider whether any of the few facts that are disputed might prevent summary judgment. There's a potential factual dispute in our case as to what Tolberd initially told Smith about the duration of the guarantee of a $10,000 annual bonus. Tolberd testified that she told Smith orally that the guarantee was only for Smith's first year of employment, although the letter Tolberd sent didn't reflect that limitation; it said simply, "Annual Salary: $70,000 with a bonus guarantee of $10,000." The letter does separately mention annual performance reviews and possible annual salary adjustments, but nothing in the letter definitively speaks to the duration of the bonus guarantee. At her deposition, Smith testified that she did not recall Tolberd saying that the bonus guarantee was limited to her first year of employment. What we're left with factually, from those materials, is that Tolberd has a recollection of saying that the bonus guarantee had a specific time limit, while Smith didn't recall mention of the limit. And we have a letter that's ambiguous.

Once Kansas Orthopaedic Center filed for summary judgment, Smith filed an affidavit contending that Tolberd's recollection on this point was "flawed" and that Tolberd's statements on the point were "false[]": "[Tolberd] states falsely that I agreed to 'a bonus guarantee of $10,000 for *the first year*.' " The district court refused to consider the affidavit, citing a rule under which an affidavit cannot be used to controvert earlier deposition testimony for the purpose of avoiding summary judgment. See *P.W.P. v. L.S.*, 266 Kan. 417, Syl. ¶ 8, 969 P.2d 896 (1998). A district court's decision to apply that rule is reviewed for abuse of discretion, 266 Kan. at 431,

and we find no abuse of discretion here. To go from saying that she didn't recall Tolberd limiting the bonus guarantee to the first year, to saying that Tolberd had testified falsely was more than a subtle shift, and the new position came only in response to a summary-judgment motion.

So while we have some dispute in the parties' recollections about whether Tolberd said the bonus guarantee had a time limitation, we have no definitive statements that the guarantee would last as long as Smith worked for Kansas Orthopaedic Center. And even if such a promise had been made in advance of employment, as long as Smith was only an at-will employee, changes still could be made to her compensation as long as they were only applied to compensation earned after the change was announced. See, *e.g.*, *Salon Enterprises, Inc.*, 29 Kan. App. 2d at 271; *Anthony Marano Co.*, 2012 WL 6861752, at *9.

At most, Smith had a subjective expectation that her bonus guarantee would continue even after a new bonus plan was announced. That would not be enough to avoid summary judgment on the facts presented here. See *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 273, 50 P.3d 495 (2002) (finding that an employee's subjective understanding about employment is not sufficient by itself to create an implied-in-fact contractual obligation on the employer).

We therefore affirm the district court's judgment.